FILED

# PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

2008 AUG 29 A 8:40

Name  Crane          Richard          J.
       (Last)         (First)          (Initial)

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST OF CA. S.J.

Prisoner Number  CDCR No. C-44519

Institutional Address  SVSP, P.O. Box 1050, Soledad, CA 93960-1050

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

RICHARD JOSEPH CRANE,

(Enter the full name of plaintiff in this action.)

C08  04126  JF

vs.

Case No. _____
(To be provided by the clerk of court)

M.S. EVANS, Warden, et al.,

PETITION FOR A WRIT
OF HABEAS CORPUS

_____

_____

_____

(Enter the full name of respondent(s) or jailor in this action)

_____

Read Comments Carefully Before Filling In

When and Where to File

        You should file in the Northern District if you were convicted and sentenced in one of these

counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa,

San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma.  You should also file in

this district if you are challenging the manner in which your sentence is being executed, such as loss of

good time credits, and you are confined in one of these counties.  Habeas L.R. 2254-3(a).

        If you are challenging your conviction or sentence and you were not convicted and sentenced in

one of the above-named fifteen counties, your petition will likely be transferred to the United States

District Court for the district in which the state court that convicted and sentenced you is located.  If

you are challenging the execution of your sentence and you are not in prison in one of these counties,

your petition will likely be transferred to the district court for the district that includes the institution

where you are confined.  Habeas L.R. 2254-3(b).

PET. FOR WRIT OF HAB. CORPUS          - 1 -

Who to Name as Respondent

You must name the person in whose actual custody you are. This usually means the Warden or jailor. Do not name the State of California, a city, a county or the superior court of the county in which you are imprisoned or by whom you were convicted and sentenced. These are not proper respondents.

If you are not presently in custody pursuant to the state judgment against which you seek relief but may be subject to such custody in the future (e.g., detainers), you must name the person in whose custody you are now <u>and</u> the Attorney General of the state in which the judgment you seek to attack was entered.

A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

1. What sentence are you challenging in this petition?

    (a)    Name and location of court that imposed sentence (for example; Alameda County Superior Court, Oakland):

Monterey County Superior      240 Church St., Salinas, CA

    Court                       Location

    (b)    Case number, if known   HC 5897

    (c)    Date and terms of sentence   Denied, habeas corpus

    (d)    Are you now in custody serving this term? (Custody means being in jail, on parole or probation, etc.)     Yes  X    No _____

    Where?

    Name of Institution:   Salinas Valley State Prison

    Address:  P.O. Box 1050/31625 Hwy. 101, Soledad, CA 93960

2. For what crime were you given this sentence? (If your petition challenges a sentence for more than one crime, list each crime separately using Penal Code numbers if known. If you are challenging more than one sentence, you should file a different petition for each sentence.)

Murder in Second Degree from Sept. 09, 1980. Sentence 16 yrs. to Life This petition concerns the denial of Due Process and Liberty Interests by CDCR.

3. Did you have any of the following?

    Arraignment:                                Yes _X__    No _____

    Preliminary Hearing:                    Yes _X__    No _____

    Motion to Suppress:                   Yes _N/A_    No _____

4. How did you plead?

    Guilty _____    Not Guilty _X__    Nolo Contendere _____

    Any other plea (specify) _____

5. If you went to trial, what kind of trial did you have?

    Jury _____    Judge alone _X__    Judge alone on a transcript _____

6. Did you testify at your trial?           Yes _X__    No _____

7. Did you have an attorney at the following proceedings:

    (a)    Arraignment                    Yes _X__    No _____

    (b)    Preliminary hearing          Yes _X__    No _____

    (c)    Time of plea                 Yes _N/A_    No _____

    (d)    Trial                        Yes _X__    No _____

    (e)    Sentencing                   Yes _X__    No _____

    (f)    Appeal                     Yes _X__    No _____

    (g)    Other post-conviction proceeding    Yes _____    No _X__

8. Did you appeal your conviction?        Yes _X__    No _____

    (a)    If you did, to what court(s) did you appeal?

            Court of Appeal               Yes _X__    No _____

            Year: _1984_    Result: _Affirmed_____

            Supreme Court of California    Yes _X__    No _____

            Year: _1984_    Result: _Denied_____

            Any other court              Yes _X__    No _____

            Year: _1990_    Result: _Denied_____

    (b)    If you appealed, were the grounds the same as those that you are raising in this

petition?                                              Yes _____    No _X_

(c)    Was there an opinion?                           Yes _X_      No_____

(d)    Did you seek permission to file a late appeal under Rule 31(a)?

                                                       Yes _____    No_X_

If you did, give the name of the court and the result:

_____ Not applicable _____

_____

9. Other than appeals, have you previously filed any petitions, applications or motions with respect to

this conviction in any court, state or federal?        Yes _X_      No_____

　　　　[Note: If you previously filed a petition for a writ of habeas corpus in federal court that

challenged the same conviction you are challenging now and if that petition was denied or dismissed

with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit

for an order authorizing the district court to consider this petition. You may not file a second or

subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28

U.S.C. §§ 2244(b).]

(a)    If you sought relief in any proceeding other than an appeal, answer the following

　　　　questions for each proceeding. Attach extra paper if you need more space.

　　　　I.    Name of Court: Monterey County Superior Court

　　　　　　　Type of Proceeding: Habeas corpus (No. HC 5897.)

　　　　　　　Grounds raised (Be brief but specific): (Same as herein stated):

　　　　　　　a. Same grounds verbatim as stated herein.

　　　　　　　b. _____

　　　　　　　c. _____

　　　　　　　d. _____

　　　　　　　Result: Denied                    Date of Result:11/05/07.

　　　　II.   Name of Court: Court of Appeal 6th Appellate District

　　　　　　　Type of Proceeding: Habeas corpus (No. H032287)

　　　　　　　Grounds raised (Be brief but specific):

PET. FOR WRIT OF HAB. CORPUS        - 4 -

a. CDCR VIOLATED PETITIONER'S 8TH AMENDMENT RIGHT TO

b. SAFETY .... (Same verbatim as herein raised).

c. CDCR VIOLATED PETITIONER'S PROTECTED LIBERTY INTERESTS.

d. CDCR FORCED PETITIONER INTO AD SEG DENYING PAROLE....

Result: Denied            Date of Result: 12/13/07

III. Name of Court: Supreme Court of California

Type of Proceeding: Habeas Corpus No. S160032

Grounds raised (Be brief but specific):

a. (The same Grounds Verbatim as raised in this

b. petition on pages six (6) forward).

c.

d.

Result: Denied            Date of Result: 08/13/08

IV. Name of Court:

Type of Proceeding:

Grounds raised (Be brief but specific):

a.

b.

c.

d.

Result:            Date of Result:

(b) Is any petition, appeal or other post-conviction proceeding now pending in any court?

Yes X      No

Name and location of court: U.S. District Courts and State Court (10).

## B. GROUNDS FOR RELIEF

State briefly every reason that you believe you are being confined unlawfully. Give facts to support each claim. For example, what legal right or privilege were you denied? What happened? Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you

1  need more space.  Answer the same questions for each claim.

2      [Note:  You must present ALL your claims in your first federal habeas petition.  Subsequent

3  petitions may be dismissed without review on the merits. 28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4  499 U.S. 467,  111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5  Claim One:_  CDCR OFFICIALS VIOLATED PETITIONER'S 8TH AMENDMENT RIGHT

6  TO SAFETY .... (Cont. attached petition)

7  Supporting Facts:_  April 30, 2001, petitioner was housed at California

8  State Prison - Los Angeles County on facility 'D' with protective

9  custody classification due to testifying in court against a member of

10  Aryan Brotherhood Prison Gang.  On this date petitioner requested a

11  Claim Two:_  CDCR OFFICIALS VIOLATED PETITIONERS 8TH AMENDMENT RIGHT TO

12  BE FREE FROM FEAR OF IMMINENT DEATH AND FORCED PETITIONER INTO AD SEG

13  Supporting Facts:_  On May 01, 2001, petitioner's Counselor (McGuinness)

14  failed to perform his duty as petitioner's (Caseworker) (Calif. Code

15  Regulation §3001.5; and failed to Due Process protections within

16  C.C.R. §§ 3335(c), 3338(f); 3338(g)(3); 3335; 3336; 3339(a); 3341.5(c)

17  Claim Three:_  CDCR OFFICIALS VIOLATED PETITIONER'S PROTECTED LIBERTY

18  INTERESTS .... (See attached petition continued):

19  Supporting Facts:_  May 01, 2001, petitioner was scheduled for Parole review

20  yet due to the confinement in Ad-Seg on February 14, 2002, petitioner

21  was denied parole consideration due to maximum security classification

22  violating liberty interests. McQuillion v. Duncan, 306 F.3d 346.

23      If any of these grounds was not previously presented to any other court, state briefly which

24  grounds were not presented and why:

25                  Not applicable.

26

27

28

PET. FOR WRIT OF HAB. CORPUS       - 6 -

1       List, by name and citation only, any cases that you think are close factually to yours so that they

2   are an example of the error you believe occurred in your case.  Do not discuss the holding or reasoning

3   of these cases:

4   Cantu v. Jones, 293 F.3d 839, 840; Keenan v. Hall, 83 F.3d 1083; Benefield

5   v. McDowall, 241 F.3d 1267, 1271-72; Toussaint v. McCarthy, 801 F.2d 1080,

6   1097.  See attached petition.

7   Do you have an attorney for this petition?         Yes_____    No__X__

8   If you do, give the name and address of your attorney:

9                          Not applicable.

10      WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in

11  this proceeding.  I verify under penalty of perjury that the foregoing is true and correct.

12

13  Executed on  August 25, 2008.             _____

14            Date                     Signature of Petitioner

15

16

17

18

19

20  (Rev. 6/02)

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RICHARD JOSEPH CRANE, | ) | No. _____ |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| M.S. EVANS, Warden, et al., | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |
| _____ | ) | |

PETITION FOR WRIT OF HABEAS CORPUS

TABLE OF CONTENTS

Page

PETITION                                              1-10

VERIFICATION                                          10

POINTS AND AUTHORITIES ARGUMENT                       11

I

THE CALIFORNIA DEPARTMENT OF CORRECTIONS         11-13
OFFICIALS VIOLATED THE PETITIONER'S EIGHTH
AMENDMENT RIGHT TO SAFETY FROM THREAT OF
VIOLENT ASSAULT OR DEATH AT THE HANDS OF
OTHER PRISONERS IN VIOLATION OF THE UNITED
STATES SUPREME COURT'S MANDATE IN FARMER
V. BRENNAN (1994) 511 U.S. 825

II                                           14-19

CALIFORNIA DEPARTMENT OF CORRECTIONS OFFICIALS
VIOLATED PETITIONER'S EIGHTH AMENDMENT RIGHT
TO BE FREE FROM THE FEAR OF IMMINENT DEATH AND
FORCED PETITIONER INTO ADMINISTRATIVE SEGREGATION
TO AVOID DEATH WITHOUT DUE PROCESS PROTECTIONS
FOR ADMINISTRATIVE SEGREGATION AND LIBERTY
INTERESTS UNDER TOUSSAINT V. McCARTHY (9th Cir.1986)
801 F.3d 1080, AND TOUSSAINT V. RUSHEN,
(N.D.Cal. 1983) 553 F.Supp. 1365, A LIBERTY
INTEREST FOR THE PETITIONER AS A CLASS ACTION
PLAINTIFF AFFIRMED IN TOUSSAINT V. YOCKEY
(9th Cir. 1984) 722 F.2d 1490

III                                          19-26

CALIFORNIA DEPARTMENT OF CORRECTIONS OFFICIALS
VIOLATED PETITIONER'S PROTECTED LIBERTY INTERESTS
AND SUBJECTED HIM TO AN ATYPICAL AND SIGNIFICANT
HARDSHIP AND DEPRIVED HIM OF ANY POSSIBILITY OF
OBTAINING PAROLE IN VIOLATION OF THE 14TH AMENDMENT
AND U.S. SUPREME COURT RULINGS WILKINSON V. AUSTIN
125 S.Ct. 2384, AND VITEK V. JONES, 100 S.Ct. 1254

A.   Liberty Interests Deprived              19

B.   An Atypical and Significant Hardship    20-26

CONCLUSION                                            28

VERIFICATION BY DECLARATION                           29

TABLE OF CONTENTS

Exhibits

Exhibit A  CDC 602 Inmate Appeal No. HDSP-C-0103292

Exhibit B  Letter to Yarborough, Warden, CSP-LAC Dated 04/30/2001

Exhibit C  Letter from Yarborough, Dated May 15, 2001

Exhibit D  Letter McGuinness (sic) Dated April 31, 2001 (sic)

Exhibit E  Affidavits of Gary Jacobs May 13, 2004, May 10, 2005

Exhibit F  Order Denying Habeas Corpus No. CHW-1577 Nov., 20, 2001

Exhibit G  CDC 812 Notice of Critical (Enemy List) three pages

Exhibit H  Report and Recommendation of U.S. Magistrate 03/26/2007

Exhibit I  Affidavit of Patrick Shegas, Filed Jun. 5, 2006

Exhibit J  Affidavit of Anthony M. Crane JUly 23, 2007

Exhibit K  Transcript Excerpts of BPT 02/18/2002, pages 21, 22, 23

Exhibit L  CDC 602 Inmate Appeal No. HDSP-S-02-01123

Exhibit M  Transfer and Movement History Dated 05/13/05

Exhibit N  CDC-128-B General Chrono on Baca, #P-38698 Enemy

Exhibit O  Order Denying Habeas Corpus in Superior Court   HC 5897

Exhibit P  Order Denying Habeas Corpus in Court of Appeal #H032287

Exhibit Q  Order Calif. Supreme Court denying habeas No. S160032

TABLE OF AUTHORITIES

Cases                                                           Page

**State Cases**

Addison v. State, 21 Cal.3d 313                                 8, 9
146 Cal.Rptr. 224, 578 P.2d 941 (1978)

Elkins v. Derby, 12 Cal.3d 410                                  8
115 CalRptr. 641, 525 P.2d 81

In re Carr (1981) 116 Cal.App.3d 962                            23
[172 Cal.Rptr. 316]

In re Elkins, 144 Cal.App.4th 475                               26

In re Wen Lee, 143 Cal.App.4th 1400                             26

Jones v. Tracy School Dist., 27 Cal.3d 99                      8
165 Cal.Rptr. 100, 611 P.2d 441

Myers v. Orange County, 6 Cal.App.3d 626                       8
86 Cal.Rptr. 198 (1970)

People v. Ramirez (1979) 25 Cal.3d 260                        23
[158 Cal.Rptr. 316

People v. Ryan (1992) 9 Cal.App.4th 1855                      23
[12 Cal.Rptr.2d 395]

San Diego County v. Myers, 147 Cal.App.3d 417                 8

**Federal Cases**

Austin v. Wilkinson, 189 F.Supp.2d 719                        21, 22

Allen v. Sakai (9th Cir. 1995) 48 F.3d 1982                   6

Benefield v. McDowall, 241 F.3d 1267                          12

Berg v. Kincheloe (9th Cir. 1986) 794 F.2d 457               25

Cantu v. Jones, 293 F.3d 839                                  12

Carlo v. City of Chino, 105 F.3d 493                         23

Colon v. Howard (2d Cir. 200) 215 F.3d 227                   22

Donoghue v. County of Orange (9th Cir. 1987)                 8
484 F.2d 926

Enomoto v. Wright, 434 U.S. 1052                             4, 16

## TABLE OF AUTHORITIES

Cases                                                                      Page

**Federal Cases**

Farmer v. Brennan, 511 U.S. 825 (1994)                                     passim

Gotcher v. Wood (9th Cir. 1995) 66 F.3d 1097                               6

Graham v. Broglin (7th Cir. 1991) 922 F.2d 379                            20

Hearns v. Terhune (9th Cir. 2005) 413 F.3d 1036                           11

Irons v. Warden of California State Prison-Solano                         25
(E.D.Cal. 2005) 358 F.Supp.2d 936

Madrid v. Gomez ((N.D.Cal. 1995) 889 F.Supp. 1146                         4, 17

Martin v. Marshall, 431 F.Supp.2d 1038                                    25

Martin v. Marshall, 448 F.Supp.2d 1143                                    25

McCullough v. Kane, Slip Copy, 2007 WL 1593227                            25
(N.D.Cal.)

McQuillion v. Duncan (9th Cir. 2002) 306 F.3d 895                         21, 25

Noll v. Carlson (9th Cir. 1987) 809 F.2d 1446                             25

Redman v. San Diego County (9th Cir. 1991)                               25
942 F.2d 1435

Sims v. Artuz (2d Cir. 2000) 230 F.3d 14                                  23

Spain v. Procunier (9th Cir. 1979) 600 F.2d 189                          6, 24

Swofford v. Mandrell, 969 F.2d 547                                        12

Toussaint v. McCarthy (9th Cir. 1986) 801 F.2d 1080                      passim

Toussaint v. Rushen (N.D.Cal. 1983)                                      passim
553 F.Supp. 1365

Toussaint v. Yockey (9th Cir. 1984) 722 F.2d 1490                        14, 19

Vitek v. Jones, 100 S.Ct. 1254                                           6, 19

Vosburg v. Solem, 845 F.2d 763                                           12, 25

Wilkinson v. Austin, 125 U.S. 2384                                       passim
[125 S.Ct. 2384]

Wilkinson v. Dotson, 125 S.Ct. 1242                                      26

# TABLE OF AUTHORITIES

## Cases

                                                      Page

**Federal Cases**

Woodhouse v. Virginia (4th Cir. 1973) 487 F.2d 889      25

Wright v. Enomoto (N.D.Cal. 1976) 462 F.Supp. 397       16, 17, 20

## Statutes

California Code of Regulations Title 15

   § 3001.5                                         4, 13

   § 3341.5(a)                                      18

   § 3335                                           17

   § 3335(c)                                        4, 5

   § 3336                                           17

   § 3338(f)                                        5

   § 3339                                           17

   § 3375(f)(C)                                     24

   § 3375(f)(G)                                     24

   § 3375(f)(2)                                     24

   § 3375(f)(3)                                     24

   § 3378(a)                                        13

   § 3378(b)(1)                                     12, 13

Evidence Code

   § 201                                            9

Penal Code

   § 5068                                           4

v

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RICHARD JOSEPH CRANE, | ) | No. |
| Petitioner, | ) | PETITION FOR WRIT OF |
| vs. | ) | HABEAS CORPUS |
| M.S. EVANS, Warden, et al., | ) | |
| Respondent(s). | ) | |

TO THE HONORABLE PRESIDING JUDGE OF THE UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA:

Petitioner, Richard J. Crane, petitions for a writ of habeas corpus and by the verified petition states as follows:

I

Petitioner is unlawfully incarcerated and restrained at Salinas Valley State Prison in Soledad, California, by M.S. Evans, Warden of Salinas Valley State Prison, pursuant to a judgment pronounced by the Los Angeles County Superior Court, in case number A146112.

1

II

In 1981 petitioner testified in court against his codefendant William Shively, a member of the Aryan Brotherhood Prison Gang in case number A146112, and was placed into protective custody in Los Angeles County Jail.

III

On March 23, 1982, petitioner was received into CDC at Chino Prison and was placed into protective custody, and has remained in protective custody due to the fact he testified in court against a member of the Aryan Brotherhood Prison Gang.

IV

In August 1996, petitioner attended his initial parole consideration hearings, and had a Minimum Eligible Parole Date (MEPD) of May 10, 1996, for over ten years prior to this initial consideration hearing.  The Board denied petitioner parole for five years.  February 14, 2002, BPT denied parole five more years.

V

Petitioner's imprisonment is unlawful because:

Ground 1:

The California Department of Corrections Officials violated the petitioner's Eighth Amendment right to safety from the threat of violent assault or death at the hands of other prisoners in violation of the United State Supreme Court's mandate in Farmer v. Brennan (1994) 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811.

The facts supporting the above ground for relief are as follows:

On April 30, 2001, petitioner wrote a letter to Warden, M. Yarborough, at California State Prison – Los Angeles County

2

1  (hereinafter, CSP-LAC), and mailed carbon copies to Captain D.K.

2  Downs, and the Director of Corrections.  The letter requested

3  the protective custody from an inmate Baca and Southern Hispanic

4  associates who had attacked White inmates on facility 'A' in

5  2000 in a race riot. (See, Exhibits B, and C.)

6  On May 01, 2001, petitioner wrote a letter to his Counselor,

7  J. McGuinness, on facility 'D' at CSP-LAC, requesting protective

8  custody from inmate Baca and his associates. (Exhibit D.)  That

9  same day McGuinness, CCI, interviewed petitioner and had the

10  petitioner transferred to administrative segregation (hereinafter

11  Ad-Seg) for maximum protective custody placement.

12  On May 02, 2001, Captain Downs came to interview petitioner

13  in Ad-Seg on facility 'A' CSP-LAC, regarding petitioner's new

14  protective custody issues concerning Baca.  Captain Downs told

15  petitioner he would be transferred to Mule Creek or Corcoran

16  protective custody prison facilities.

17  On May 09, 2001, petitioner was taken from Ad-Seg to a CDC

18  Bus destined for High Desert State Prison (unbeknownst to the

19  petitioner), where he was placed in the front cage of the Bus.

20  Inmate Baca was on the same Bus in the back general population.

21  On May 09, 2001, arrival at High Desert State Prison, the

22  petitioner did not know it was one of the most notorious Gang

23  violent prisons in California with a gang policy that requires

24  an informant to be stabbed by general population prisoners.

25  May 09, 2001, High Desert State Prison was on lockdown due

26  to (unbeknownst to petitioner) racial riots and assaults mandated

27  separate holding areas of inmates by race. Petitioner was housed

28  with Gary Jacobs whom was stabbed June 2001 for being a snitch.

On May 14, 2001, petitioner was housed at High Desert State Prison (hereinafter, HDSP) and had to secretly ask his Counselor Gunter for protective custody, and finally secretly (without gang members observing), filed a CDC 602 Inmate Appeal. (Exhibit A.) On October 07, 2001, petitioner filed both the emergency CDC 602, and a Petition for writ of habeas corpus in Lassen County, which was denied without prejudice on November 20, 2001. (See, Exhibit F.)

On October 18, 2001, petitioner was taken to administrative segregation at HDSP, and stayed in segregation till August 24, 2002.

Ground 2:

California Department of Corrections Officials violated petitioner's Eighth Amendment right to be free from the fear of imminent death and forced petitioner into administrative segregation to avoid death without due process protections for administrative segregation and liberty interests under Toussaint v. McCarthy (9th Cir. 1986) 801 F.3d 1080, and Madrid v. Gomez (N.D. Cal. 1995) 889 F.Supp. 1146.

On May 01, 2001, J. McGuinness, failed to perform his duty as petitioner's Correctional Counselor (Caseworker) pursuant to California Code of Regulations Title 15 § 3001.5, and Penal Code § 5068, and failed to make "consideration of the safety of the prisoner." ibid.  Counselor, J. McGuinness failed to afford the petitioner a review of his Ad-Seg placement within ten days under Calif. Code of Regulations Title 15, § 3335(c), and did nothing whatsoever to assure petitioner Due Process  under the Fourteenth Amendment to the United States Constitution. Enomoto v. Wright, 434 U.S. 1052; and Wilkinson v. Austin, 125 U.S. 2384, 2397.

The facts supporting the above ground for relief are as follows:

On May 01, 2001, Counselor, J. McGuinness, interviewed the petitioner for Ad-Seg protective custody, and had petitioner's Central File and current 20 years of protective custody placement due to testifying against a member of the Aryan Brotherhood Prison Gang. Furthermore, the fact that the Aryan Brotherhood requires the murder of any prisoner who has testified against a member of the prison gang makes this a life threatening situation for the petitioner. (See, Exhibit G, CDC 812.)

On May 01, 2001, J. McGuinness, CCI, petitioner's Caseworker and the most responsible official whom possessed petitioner's Central File, egregiously and recklessly failed to take any actions to afford petitioner a Due Process following Ad-Seg for maximum protective custody.  Calif. Code Regs. Title 15 § 3335(c):

> "An inmate's placement in temporary segregation shall be reviewed by the Institutional Classification Committee (ICC) within 10 days of receipt in the unit and under the provisions of section 3338(a) of these regulations. Action shall be taken to retain the inmate in temporary segregation or release to general population. ICC shall review the inmate at least every 30 days thereafter until the inmate is removed from temporary segregation."

On May 02, 2001, Captain Downs interviewed the petitioner in Ad-Seg; yet, this official did nothing to afford petitioner Due Process.  Calif. Code of Regs. Title 15 § 3338(f):

> "When the reason for an inmate's placement in administrative segregation is for nondisciplinary reasons, the hearing will consider all available evidence or information relating to the validity of the reasons given for such placement as well as the need to retain the inmate in administrative segregation pending resolution of the situation or circumstances set forth in the administrative segregation order."

Ground 3:

California Department of Corrections Officials violated the petitioner's protected liberty interests and subjected him to an atypical and significant hardship and 308 days in extreme solitary confinement and deprived him of any possibility of obtaining parole in violation of the Fourteenth Amendment's Due Process protections. Gotcher v. Wood (9th Cir. 1995) 66 F.3d 1097, 1101; Wilkinson v. Austin, 125 S.Ct. 2384; Vitek v. Jones, 100 S.Ct. 1254.

The facts supporting the above ground for relief are as follows:

On May 09, 2001, petitioner was transferred from CSP-LAC from Ad-Seg, and was not afforded protective custody placement, nor was petitioner afforded any hearing concerning all of his protective custody factors as a protective custody classified prisoner. (See, Exhibit H, March 26, 2007, R & R by Magistrate.)

Petitioner had to live in fear for his life, and contemplated suicide daily to escape the imminent attack by gang members at High Desert State Prison. (See Exhibits I, and J, Affidavits.)

The petitioner had to secretly file a CDC 602 Inmate Appeal (i.e., if gang members knew they would have attacked him), and a Petition for Writ of Habeas Corpus.  The HDSP Officials placed the petitioner in Ad-Seg, where petitioner had to endure 308 days in extreme solitary confinement and outdoor exercise in a dog kennel cage, which petitioner attended only several times due to humiliation and lack of movement allowed. Allen v Sakai 48 F.3d 1082.

Petitioner had to endure from October 18, 2001, until August 24, 2002, (approx.) in extreme solitary, and another year in a modified lockup (PMU) unit at HDSP. Spain v Procunier 600 F.2d 189.

1     On February 14, 2002, petitioner attended a Board of Prison
2  Terms subsequent parole hearing (which was more than 5 years from
3  1996), and the Board (BPT) acknowledged that, "I note that you
4  were transferred here to High Desert State Prison on May 9th of
5  2001 due to safety concerns." (See, Exhibit K, BPT Trans. excerpt
6  page 21, lines 23-25.)

7     On February 14, 2002, petitioner was in Ad-Seg at HDSP and
8  denied any opportunities to gain any programs for the BPT, and
9  this was recorded by the BPT, which stated that, "You're currently
10 in AdSeg unit as of December (sic, October 18th, 2001) 18th 2001
11 due to safety concerns. Your current custody is Max B." (Exhibit
12 K, BPT Trans. p. 22, lines 1-3.)

13    These officials, J. McGuinness, CCI, D.K. Downs, Captain, and
14 M. Yarborough, Warden of CSP-LAC, further deprived petitioner of
15 any opportunity to meet Board of Prison Terms recommendations, and
16 deprived the petitioner of any opportunity to become eligible for
17 parole, which was the denial of a liberty interests in violation
18 of petitioner's rights to Due Process under the Fourteenth
19 Amendment.

20    On May 15, 2001, M. Yarborough wrote petitioner a letter in
21 response to petitioner's April 30, 2001, letter for protective
22 custody, but claimed that the petitioner was transferred to Mule
23 Creek State Prison (MCSP); yet, the letter addressed to Mule Creek
24 shows the Post Office Box and complete address of High Desert
25 State Prison. (See, Exhibit C.)

26    On May 09, 2001, petitioner had served 248 months of a
27 sentence, and petitioner's 16 years to life term started January
28 1985 and 1996 was his true Minimum Eligible Parole Date.

VI

The petitioner's pending federal civil rights cases (Richard Joseph Crane v. D.L. Runnels, Warden, No. Civ.S-02-2203-MCE-KJM, against the Warden of HDSP, and Richard Joseph Crane v. M. Yarborough, Warden, CSP-LAC, case No. C-05-8534 JSL (JC), have tolled the statute of limitations. Donoghue v. County of Orange, (9th Cir. 1987) 848 F.2d 926, 930-931:

"Under California's equitable tolling doctrine, the prior pursuit of a federal remedy may toll the state statute of limitations when a person has "several formal legal remedies and reasonably and in good faith pursues one. Jones v. Tracy School Dist., 27 Cal.3d 99, 108, 165 Cal.Rptr. 100, 104, 611 P.2d 441 (1980) (citing Elkins v. Derby, 12 Cal.3d 410, 115 Cal.Rptr. 641, 525 P.2d 81 (1974). The doctrine applies to save a state claim from dismissal when a plaintiff has reasonably pursued a concurrent federal remedy. Addison v. State, 21 Cal.3d 313, 146 Cal.Rptr. 224, 578 P.2d 941 (1978). The equitable tolling "rule is not predicated upon the necessity of the completion of the one remedy as a prerequisite to the pursuit of the other." Myers v. Orange County, 6 Cal.App. 3d 626, 635, 86 Cal.Rptr. 198, 203 (1970). The statute of limitations is tolled during the period while time is consumed in a appeal. Id. at 635-36, 86 Cal.Rptr. at 203. The doctrine suspends the statute of limitations pending exhaustion of administrative remedies, even though no statute makes exhaustion a condition of the right to sue. San Diego County v. Myers, 147 Cal.App. 3d 417, 423...."

"Furthermore, since the federal court action was timely filed, defendants were notified of the action and had the opportunity to

8

1 begin gathering their evidence and preparing their defense.  No

2 prejudice to defendant is shown...." Addison v. State of Calif.,

3 21 Cal.3d 313, 319. (See, Exhibit H, Magistrate's Report, dated

4 March 26, 2007, pp. 12-13, 17 ¶3, 18-19 fn. 20.)

VII

6 On March 01, 2007, petitioner attended another Board of Parole

7 Hearings, and was denied parole consideration for five more years,

8 and petitioner explained how he had been on solitary confinement.

9 (BPH, Trans. pp. 39 lns. 10-11, p. 44; 45 lns. 9-10; p. 46 lns 8-9)

VIII

11 Petitioner hereby requests that this Court takes Judicial

12 Notice herein pursuant to Evidence Code, §201, herein of the

13 petitioner's pending Civil Rights actions against the officials

14 of the California Department of Corrections and Rehabilitation, in

15 United States District Court for the Central District of California

16 Case No. C-05-8534-JSL (JC), and Ninth Circuit Case No. 07-15911.

17 (See, Exhibit H, Magistrate Judge's Report, March 26, 2007.)

IV

19 Petitioner hereby incorporates by reference the accompanying

20 memorandum of points and authorities, and attached exhibits,

21 affidavits, and records on file in the federal civil rights case

22 pending as attached exhibit H indicates.

23 **WHEREFORE,** petitioner respectfully requests that this Court:

24 1. Take Judicial Notice of the record and pleadings in the

25 above-mentioned civil rights actions;

26 2. Order respondent to show cause why petitioner is not

27 entitled to the relief sought;

9

3. Conduct an evidentiary hearing to answer the factual questions necessary to determine the merits of petitioner's claim;

4. After full consideration of the issues raised by this petition, grant the petitioner release on parole;

5. Grant such other and further relief as may seem just under the circumstances.

Dated: August 25, 2008

Respectfully submitted,

_____
Richard J. Crane, in pro se

## VERIFICATION

I have read the foregoing petition for writ of habeas corpus and declare that the contents of the petition are true and correct under the penalty of perjury.

Executed this 25th day of August 2008 at Monterey County California.

Dated: August 25, 2008

Respectfully submitted,

_____
Richard J. Crane, in pro se

POINTS AND AUTHORITIES

ARGUMENT

I

**THE CALIFORNIA DEPARTMENT OF CORRECTIONS OFFICIALS
VIOLATED THE PETITIONER'S EIGHTH AMENDMENT RIGHT
TO SAFETY FROM THREAT OF VIOLENT ASSAULT OR DEATH
AT THE HANDS OF OTHER PRISONERS IN VIOLATION OF
THE UNITED STATES SUPREME COURT'S MANDATE IN
FARMER V. BRENNAN (1994) 511 U.S. 825**

The Officials of the California Department of Corrections
and Rehabilitation, Mike Yarborough, Warden, of CSP-LAC; D.K.
Downs, Captain of facility 'D' at CSP-LAC; J. McGuinness,
Correctional Counselor I, deprived petitioner of the right to
personal safety following the May 01, 2001, protective custody
segregation and allowed for petitioner's transfer to an active
gang enforcement mainline prison HDSP with the very enemy for
which petitioner was in maximum protective custody, but instead
of affording petitioner a follow up classification permitted his
transfer with the enemy inmate to HDSP on May 09, 2001.

The Eighth Amendment requires prison officials to ensure the
safety of prisoners, including protecting prisoners from each
other. Farmer v. Brennan, 511 U.S. 825, 833 (1994); Hearns v.
Terhune, 413 F.3d 1036, 1040-42 (9th Cir. 2005). A prison official
violates the Eighth Amendment when: (1) an inmate is incarcerated
under conditions posing a substantial risk of serious harm; and
(2) the prison official deliberately disregards the risk by
failing to take reasonable measures to abate it. Farmer, 511 U.S.
at 847; Hearns, 413 F.3d at 1042-1043.

1    On April 30, 2001, petitioner had even mailed a carbon copy
2    of his letter requesting protective custody to the Director of
3    Corrections (i.e., James Gomez).   Petitioner was threatened by the
4    enemy inmate and his affiliates.   Petitioner personally advised
5    officials Yarborough and Downs that he was being threatened  by
6    the enemy inmates' affiliates and requested that he be separated
7    from the enemy inmate and his affiliates and placed in protective
8    custody.   Petitioner alerted Counselor McGuinness to his safety
9    concerns and the fact that he had just provided details regarding
10   his concerns to Warden, Mike Yarborough.   Officials transferred
11   petitioner out of their facility and were "well aware of the"
12   threat to safety it posed to transfer petitioner to HDSP and with
13   a known enemy.   Despite the concerns petitioner expressed to
14   these officials in late April/early May 2001, petitioner's central
15   file contained no documentation that petitioner considered the
16   enemy inmate to be an enemy at least as of October 2001.
17       The clearly established Supreme Court and Ninth Circuit law,
18   discussed above, that prison officials have an obligation under
19   the Eighth Amendment to take reasonable steps to protect inmates
20   from physical abuse, and given the existence of California Code
21   of Regulations, Tile 15, section 3378(b)(1), this requires prison
22   officials to update a prisoner's file as any information critical
23   to prisoner safety becomes known, and which represents an
24   acknowledgement that the contemporaneous recording of such
25   information is an integral part of complying with such duty to
26   protect. Cantu v. Jones, 293 F.3d 839, 840; Vosburg v. Solem, 845
27   F.2d 763, 765-766 (8th Cir. 1988); Swofford v. Mandrell, 969 F.2d
28   547; Benefield v. McDowall, 241 F.3d 1267.

The petitioner's Correctional Counselor, J. McGuinness, was responsible for petitioner's custody case file pursuant to C.C.R. Title 15, § 3001.5 (Caseworker), and under C.C.R. § 3378 (a) was required to further review petitioner's current protective custody placement from the Aryan Brotherhood Prison Gang.

C.C.R. Title 15, 3378(b)(1)

Documentation of Critical Case Information.

(1) The CDC Forms 812 and 812-C shall be updated as any critical information becomes known and is documented in the inmate/parolee's central file. The forms shall be reviewed and updated at the time of any change in the inmate/parolee's status or placement."

On March 23, 1982, petitioner was received into the California Department of Corrections, and was placed into Palm Hall (protective custody) at Chino Prison Reception Center, due to the fact he had testified in court against his co-defendant, Wm. Shively, a member of the Aryan Brotherhood prison gang. On May 25th of 1983, petitioner was transferred to Deuel Vocational Institution (DVI) and housed in protective custody segregation in East Hall. On January 14, 1983, the United States District Court Northern District of California ruled on behalf of petitioner in a class action lawsuit, requiring that petitioner could not be confined in segregation. Toussaint v. Rushen (N.D.Cal. 1983) 553 F.Supp. 1365. On February 13, 1983, petitioner was transferred to California Mens Colony (CMC), as an alternate Protective Custody placement to avoid the segregation which the Court ruled was unconstitutional in the class action Toussaint v. Rushen, 553 F.Supp. 1365, 1367. Petitioner has remained protective custody classification since inception into CDCR.

II

CALIFORNIA DEPARTMENT OF CORRECTIONS OFFICIALS
VIOLATED PETITIONER'S EIGHTH AMENDMENT RIGHT
TO BE FREE FROM THE FEAR OF IMMINENT DEATH AND
FORCED PETITIONER INTO ADMINISTRATIVE SEGREGATION
TO AVOID DEATH WITHOUT DUE PROCESS PROTECTIONS
FOR ADMINISTRATIVE SEGREGATION AND LIBERTY
INTERESTS UNDER TOUSSAINT V. McCARTHY (9th Cir.1986)
801 F.3d 1080, AND TOUSSAINT V. RUSHEN,
(N.D. Cal. 1983) 553 F.Supp. 1365, A LIBERTY
INTEREST FOR THE PETITIONER AS A CLASS ACTION
PLAINTIFF AFFIRMED IN TOUSSAINT V. YOCKEY
(9th Cir. 1984) 722 F.2d 1490

The Officials of the CDCR violated petitioner's right to be free from administrative segregation, which was a clear liberty interest for petitioner, since the petitioner was a actual Class Action member of the plaintiff class of protective custody inmates housed at DVI East and West Hall.

> "Plaintiff's motion for a preliminary injunction involves the second phase of Wright v. Enomoto (N.D. Cal.1976) 462 F.Supp. 397, aff'd, (1978) 434 U.S. 1052, 98 S.Ct. 1223, 55 L.Ed.2d 756 (hereinafter Wright I), a class action. ... prisoner confined or subject to confinement in administrative segregation at four California state prison-- California State Prison at San Quentin, Deuel Vocational Institution at Tracy, ...." Toussaint v. Rushen, 553 F.Supp. 1365, p. 1367.

On May 09, 2001, petitioner was transferred from CSP-LAC, and received at HDSP with a further classification of Maximum Protective Custody, since he was in the administrative segregation at California State Prison - Los Angeles County, when prison officials transferred petitioner to HDSP. Petitioner had to file an inmate appeal, and a petition for writ of habeas corpus to avoid being stabbed by active gang members. On October 18, 2001, petitioner was taken to administrative segregation at HDSP, and remained confined in extreme segregation with outdoor exercise

access each three to four days in a dog kennel type cage, for 308

days until August 24, 2002. Toussaint v. Rushen, 553 F.Supp. at

1387, 1382:

> "Confinement in administrative segregation may
> be unconstitutional if imposed arbitrarily and if
> disproportionate to the reasons purportedly
> justifying such placement. See, generally, Furtado
> v. Bishop (1st Cir. 1979) 604 F.2d 80, 88, cert.
> denied, (1980) 444 U.S. 1035, 100 S.Ct. 710, 62
> L.Ed.2d 672; Adams v. Carson (7th Cir. 1973) 488
> F.2d 619, 635-36. This is so even where the
> segregation is denominated "administrative" rather
> than "punitive" or "disciplinary." Fitzgerald v.
> Procunier (N.D.Cal. 1975) 393 F.Supp. 505, 511,
> aff'd , (9th Cir. 1973) 484 F.2d 960. Review of
> the evidence presented indicates that many prisoners
> are forced to endure conditions of administrative
> segregation which are plainly disproportionate to
> the offense, if any, which led to their confinement
> therein."

The Court in Toussaint ibid., ruled in petitioner's favor

that, he had the right not to be segregated in solitary

confinement, in "East Hall and West Hall at DVI; and/or any other

similar units now or hereinafter used." Toussaint v. Rushen, 553

F.Supp. at 1387, fn. 1.

The CDCR Officials were fully informed of petitioner's

protective custody, and transferred petitioner without due process

and liberty interests protections to HDSP, where active gang

members would stab or kill the petitioner because he had testified

against Wm. Shively, a member of the Aryan Brotherhood.

> "Testifying against, or otherwise informing on,
> gang activities can invite one's own death sentence.
> It is worth noting in this regard that for prison
> gang members serving life sentences, some without
> the possibility of parole, the deterrent effects
> of ordinary criminal punishment may be substantially
> diminished." Wilkinson v. Austin, 125 S.Ct. 2384,
> 2396-97 ("See Amicus curia Brief of State of
> California.")

1    The petitioner was deprived of protection under Farmer v.

2 Brennan, and forced to either be stabbed or stay in administrative

3 segregation in violation of Wright v. Enomoto (N.D.Cal. 1976) 462

4 F.Supp. 397, 402-403:

5            "The Supreme Court explicitly stated that the
             transfer decisions did not result in maximum
6            security segregation. Meachum v. Fano, supra, 427
             U.S. at 219, 96 S.Ct. 2532; Montanye v. Haymes,
7            id. 427 U.S. 236, 96 S.Ct. 2543.  Contrary to
             defendants' contention, these opinions do not hold
8            that a prisoner may be confined in maximum security
             segregation "for whatever reason or for no reason at
9            all", regardless of the extent of the deprivation
             caused by such segregation."

10
             (Imposition of "solitary" confinement) represents
11           a major change in the conditions of confinement
             and is normally imposed only when it is claimed
12           and proved that there has been a major act of
             misconduct.  Here ... there should be minimum
13           procedural safeguards as a hedge against a
             arbitrary determination of the factual predicate
14           for imposition of the sanction."

15           Wolf v. McDonnell, supra, 418 U.S. at 571-72, n.
             19, 94 S.Ct. at 2982."

16
17    On February 14, 2002, petitioner attended a Board of Prison

Terms Lifer Parole Consideration Hearing from administrative
18
segregation at HDSP, and the the Board recognized petitioner's
19
"CDC 812 that there is a confidential memo that addresses your
20
ex-association with the Aryan Brotherhood." (Exhibit K p. 23 ¶25-27)
21
     The Board of Prison Terms Deputy Commissioner acknowledged
22
that, petitioner was transferred to HDSP for his own protection,
23
which was with a recent enemy inmate. (Exhibit K, p. 21 ¶23-25.)
24
             "DEPUTY COMMISSIONER RODRIGUEZ: ... I note that you
25           were transferred here to High Desert State Prison
             on May 9th of 2001 due to safety concerns."
26
     The decision Wright v. Enomoto, was affirmed by the United
27
States Supreme Court on February 21, 1978, 434 U.S. 1052,
28

1   98 S.Ct. 1223, 55 L.Ed.2d 756.

2           "Moreover, Meachum And Montanye Hold that if the
    state itself imposes limits on its discretion by
3   conditioning decisions such as prison transfer on
    a specific standard being met, the state creates
4   a liberty interest which is protected by due process.
    This is true whether the limits which the state
5   imposes on itself stem from statute, rule, or
    regulation. Meachum v. Fano, supra, 427 U.S. at 226,
6   96 S.Ct. 2532." Wright v. Enomoto, 465 F.Supp. 397,
    p. 402.

7       The California Department of Corrections and Rehabilitation

8   has adopted rules governed by the California Code of Regulations

9   Title 15, which are recognized liberty interests.

10          "However, section 3339(c) provides that [r]elease
    from segregation status shall occur at the earliest
11  possible time in keeping with the circumstances and
    reasons for the inmate's initial placement in
12  administrative segregation." 15 Cal.Admin.Code
    § 3339(a)(emphasis added). Section 3339(a) indicates
13  that absent justification, a prisoner may not be
    retained in administrative segregation. The use
14  of the word, shall, constitutes the mandatory
    language needed to create a liberty interest. See
15  Hewitt, 459 U.S. at 471-72, 103 S.Ct. at 871."
    Toussaint v. McCarthy (9th Cir. 1986) 801 F.2d 1080,
16  1097.

17      The petitioner asserts that the Officials of CDCR violated

18  their own regulations, i.e., C.C.R. Title 15, §§ 3335, 3336, and

19  3339, declared as liberty interests by the Ninth Circuit for

20  California prisoners in Toussaint v. McCarthy, 801 F.2d 1080.

21          "In Toussaint IV, however, the Ninth Circuit held
    that sections 3335(a) 3336, and 3339(a) of Title 15
22  of the California Code of Regulations, taken together,
    do create a constitutionally protected liberty
23  interest to be free from placement in administrative
    segregation. 801 F.2d at 1097-98." Madrid v. Gomez,
24  889 F.Supp. 1146, p. 1271.

25      The CDCR Officials violated these liberty interests, and

26  another liberty interest which petitioner had as declared by the

27  Court in Madrid v. Gomez (N.D.Cal. 1995) 889 F.Supp. 1146, 1271:

28

                                    17

1

"Although not addressed by Toussaint IV, we
conclude that another California regulation, Cal.
2
Code Regs. tit. 15, § 3341.5(c)(3), also creates
a liberty interest in freedom from administrative
3
segregation."

4      If the CDCR Officials intended on placing petitioner in a

5   Protective Housing Unit, they never did make such a segregation

6   order or placement.  C.C.R. Title 15, § 3341.5(a).

7
"(a) Protective Housing Unit (PHU). An inmate
whose safety would be endangered by general population
8
placement may be placed in the PHU providing the
following criteria are met:
9

10
(1) The inmate does not require specialized
housing for reasons other than protection.
(2) The inmate does not have a serious psychiatric
11
or medical condition requiring prompt access to
hospital care.
12
(3) The inmate is not documented as a member or an
affiliate of a prison gang.
13
(4) The inmate does not pose a threat to the
safety or security of other inmates in the PHU.
14
(5) The inmate has specific, verified enemies
identified on CDC Form 812 likely to and capable
15
of causing the inmate great bodily harm if placed
in general population.
16
(6) The inmate has notoriety likely to result in
great bodily harm to the inmate if placed in general
17
population."
(7) There is no alternative placement which can
18
ensure the inmate's safety and provide the degree
of control required for the inmate.
19
(8) It has been verified that the inmate is in
present danger of great bodily harm.  ...."

20
As a member of the plaintiff class, petitioner was
21
transferred out of administrative segregation along with several
22
hundred other protective custody prisoners at ("DVI"), following
23
the Court's ruling in Toussaint v. Rushen (January 14, 1983) 553
24
F.Supp. 1365, and this should act as a liberty interest on the
25
right not to be arbitrarily segregated; and as a recognized ruling
26
on petitioner's protective custody classification under Farmer v.
27
Brennan, 511 U.S. 825.
28

> "Plaintiffs are a class of approximately 2,000 prisoners confined in administrative segregation in four California State Prisons: Deuel Vocational Institution, Folsom Prison, San Quentin Prison, and Soledad Correctional Training Facility.  Defendants are the wardens of the four prisons and the California Director of Corrections.  Plaintiff sought relief on two claims.  In Wright v. Enomoto, 462 F.Supp. 397 (N.D.Cal. 1976), aff'd, 434 U.S. 1052, 98 S.Ct. 1223, 55 L.Ed.2d 756 (1978) ("Wright I"), a three-judge panel convened pursuant to 28 U.S.C. § 2281, now repealed, granted relief on the first claim.  The court concluded that the due process clause of the fourteenth amendment required certain procedures before a prisoner could be placed in administrative segregation." Toussaint v. Yockey (9th Cir. (Cal.) 1984) 722 F.2d 1490, 1491.

On February 13, 1983, petitioner was transferred out of Deuel Vocational Institution along with several hundred protective custody prisoners transferred out of administrative segregation. The order required that CDCR could not administratively segregate petitioner in "any other similar units now or hereinafter used." Toussaint, ibid, 1387, fn. 1.  The actions of these CDCR officials circumvented and violated the Court's ruling for the petitioner. Toussaint v. Yockey, 722 F.2d 1490, 1491.

III

CALIFORNIA DEPARTMENT OF CORRECTIONS OFFICIALS VIOLATED PETITIONER'S PROTECTED LIBERTY INTERESTS AND SUBJECTED HIM TO AN ATYPICAL AND SIGNIFICANT HARDSHIP AND DEPRIVED HIM OF ANY POSSIBILITY OF OBTAINING PAROLE IN VIOLATION OF THE 14TH AMENDMENT AND U.S. SUPREME COURT RULINGS WILKINSON V. AUSTIN 125 S.Ct. 2384, AND VITEK V. JONES, 100 S.Ct. 1254

The petitioner was classified as protective custody since 1982 by the CDC, and was denied due process and numerous liberty interests resulting from these actions.

A.  Liberty Interests Deprived

The CDCR Officials deprived petitioner of every liberty interests available to a California state prisoner, and clearly

subjected petitioner to an egregious atypical and significant hardship, and no opportunity for parole consideration.

> "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protections must establish that one of these interests is at stake. A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word "liberty," see, e.g., Vitek v. Jones, 445 U.S. 480, 493-494, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) (liberty interest in avoiding involuntary psychiatric treatment and transfer to mental institution), or it may arise from expectation or interest created by state laws or policies, see, e.g., Wolf v. McDonnell, 418 U.S. 539, 556-558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (liberty interest in avoiding withdrawal of state-created system of good-time credits)." Wilkinson v. Austin, 125 S.Ct. 2384, 2393.

The courts have ruled that "a quantum change in the level of custody," from "the run of the prison in contrast to the approximation to solitary confinement that is disciplinary segregation," Graham v. Broglin, 922 F.2d 379, 381 (7th Cir. 1991) is a deprivation of a liberty interest. Wright v. Enomoto, (N.D.Cal. 1976) 462 F.Supp. 397, 402-403, affirmed 434 U.S. 1052, ruling a transfer to administrative segregation for non disciplinary reasons is a denial of a liberty interests.

B.  An Atypical and Significant Hardship

On May 01, 2001, petitioner was subjected numerous extreme hardships, and deprived of many opportunities that a prisoner has in CDCR.  Petitioner had served 248 months of a sentence of 15 years to life, which required that petitioner serve 190 months before he was eligible for parole.  CDCR Officials deprived petitioner of any opportunity for parole, since he was required to remain in Ad-Seg for some 308 days and attend the Board of Prison Terms from Ad-Seg.

The petitioner's minimum eligible parole date was 1996, and he was denied parole consideration for five years in 1996, but was scheduled for a parole consideration hearing in August 2001 when transferred to HDSP on May 09, 2001.

> "Although we have never directly held that California's parole scheme creates a protected liberty interest, we have repeatedly assumed that it does. See Powell v. Gomez, 33 F.3d 39, 40 (9th Cir. 1994); Perveler v. Estelle, 974 F.2d 1132, 1134 (9th Cir. 1992). Today we hold what we previously assumed. Under the "clearly established" framework of Greenholtz and Allen, we hold that California's parole scheme gives rise to a cognizable liberty interest in release on parole. The scheme "creates a presumption that parole release will be granted" unless the statutorily defined determination are made. Allen, 482 U.S. at 378 (quoting Greenholtz, 442 U.S. at 12)." McQuillion v. Duncan (9th Cir. 2002) 306 F.3d 895, 902-903.

The petitioner was deprived of any opportunity for parole consideration, and subjected to 308 days, extreme solitary confinement, and another year in a Psychiatric Management Unit (PMU) at HDSP, without due process. Austin v. Wilkinson, 189 F.Supp.2d 719, 731:

> "As with Heard and DeJarnette, the department's decision to retain Garner at the OSP rendered him ineligible for parole. Garner has served more than twenty-five years of his original sentence of life with a possibility of parole after fifteen years. However, the Department's rule forbidding parole release from high maximum security denied the parole board an opportunity to exercise its discretion." Affirmed in Wilkinson v. Austin, 125 S.Ct. 2384, (2005).

The petitioner had not committed any disciplinary offense, but was forced into segregation for protection.

> "On December 18, 2001, Heard had a parole hearing. At the time of the hearing, Heard had served 235 months of incarceration. The parole board guidelines suggested Heard should be paroled after serving between 156 and 192 months. (Heard Test. at 289). Heard was denied parole because of his high maximum security

classification." <u>Austin v. Wilkinson</u>, 189 F.Supp.
2d 719, 730-731.

The petitioner was denied any consideration of parole due
to the maximum security classification of administrative
segregation, and could not perform any function to become eligible
for consideration. <u>Austin v. Wilkinson</u>, 189 F.Supp.2d at 739:

> "The Fourth and Ninth Circuit used the general
> prison population as the comparative baseline. See
> Beverati v. Smith, 120 F.3d 500, 504 (4th Cir. 1997);
> Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996).
> In contrast, the Second and Third Circuits use the
> typical conditions of administrative segregation
> when deciding whether conditions are atypical.
> See Griffin v. Vaughn, 112 F.3d 703, 708 (3rd Cir.
> 1997); Brooks v. DiFasi, 112 F.3d 46, 49 (2d Cir.
> 1997)."

The conditions imposed on petitioner in administrative
segregation meet the atypical and significant hardship standard
as pronounced by many federal court's for liberty interest due
process protections, and the CDCR Officials subjected petitioner
to an atypical and significant hardship. <u>Colon v. Howard</u> (2d Cir.
2000) 215 F.3d 227, 231:

> "Confinement in normal SHU conditions for 305
> days is in our judgment a sufficient departure from
> ordinary incidents of prison life to require due
> process protections under Sandin."

The 308 days of extreme solitary exceeds the <u>Sandin</u> standard
announced by federal courts; "we have characterized segregated
sentences of 125-288 days as "relatively long," and thus
necessitating "specific articulation of ... factual findings"
before the district court could properly term the confinement
atypical or insignificant, Hynes v. Squillace, 143 F.3d 653, 658
(2d Cir. 1998) (describing the segregative confinement at issue in
Miller v. Selsky, 111 F.3d 7 (2d Cir. 1997) (125 days)); Brooks v.

Difasi, 112 F.3d 46 (180 days); and Wright v. Coughlin, 132 F.3d 133 (168 days in SHU, followed by 120 days in keeplock)." Sims v. Artuz (2d Cir. 2000) 230 F.3d 14, 23.

The Ninth Circuit has repeatedly held that, the California Code of Regulations "created a liberty interest in being housed with the general prison population rather than in administrative segregation.  According to the statutes, an inmate could be moved to administrative segregation if he or she engaged in serious misconduct and prison officials determined a "need for control" or "the threat of a serious disturbance." Id. at 472, 103 S.Ct. at 871. Carlo v. City of Chino, 105 F.3d 493, 497-498 (quoting Hewitt v. Helms, 459 U.S. 460, 471-72.)

> "While the Court noted that the adoption of procedural guidelines alone would not implicate the Fourteenth Amendment, it held that "the repeated use of explicitly mandatory language in connection with requiring" that specific preconditions be met before removing a prisoner from the general population "demands a conclusion that the State has created a protected liberty interest." id. at 472, 103 S.Ct. at 871. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 462, 109 S.Ct. 1902, 1909, 104 L.Ed. 2d 506 (1989) ("'a State creates a protected liberty interest by placing substantive limitations of official discretion'") (quoting Olim v. Wakinekona, 461 U.S. 238, 249 ...." Carlo v. City of Chino, 105 F.3d 493, 498.

The California Supreme Court has held, "[w]hen an individual is subjected to deprivatory governmental action, he always has a due process liberty interest both in fair and unprejudicial decision making and in being treated with respect and dignity." People v. Ryan (1992) 9 Cal.App.4th 1855 [12 Cal.Rptr.2d 395]; People v. Ramirez (1979) 25 Cal.3d 260 [158 Cal.Rptr. 316]; In re Carr (1981) 116 Cal.App.3d 962 [172 Cal.Rptr. 417] (holding that

1  due process requires notice and a hearing, including the right to

2  call witnesses and to receive help from a staff member if deemed

3  necessary, before a prisoner's custody can be raised from "Maximum

4  B" to "Maximum A").

5      On May 29, 2002, petitioner submitted another CDC 602 Inmate

6  Appeal (No. HDSP-S-02-01123), at HDSP requesting transfer out of

7  administrative segregation, and the appeal was granted at the First

8  Level stating petitioner was "scheduled for transfer to MCSP on

9  July 10 2002. (See, Exhibit L, p. 3). Yet, petitioner was placed in

10  Psychiatric management Unit (PMU) created by CDC at the time to

11  house protective custody prisoner's at HDSP, and petitioner remained

12  in this segregated housing unit until May 12, 2003, when petitioner

13  was finally transferred to Pleasant Valley State Prison. (See,

14  Exhibit M, Offender History page 2.). Spain v Procunier 600 F.2d 189.

15      The Officials of CDC finally documented inmate Baca, #P-38698,

16  as petitioner's enemy on October 16, 2001, and placed petitioner

17  into administrative segregation on October 18, 2001, until August

18  24, 2002, and in PMU from August 24, 2002, until May 12, 2003.

19      The May 09, 2001, transfer of petitioner to HDSP without a

20  hearing violated Calif., Code of Regulations, Title 15, § 3375(f)(C)

21  which provides "Inmates shall be given written notice at least 72

22  hours in advance of a hearing which could result in an adverse

23  effect. Adverse effect is defined as: ... "Involuntary placement

24  in segregated housing." ibid. These regulations further declare

25  that, "Transfer of an inmate to a more restrictive institution or

26  program where the security level is higher." § 3375(f)(G). Further,

27  § 3375(f)(2) provides that, "Except as provided in subsection 3375

28  (f)(3), the inmate shall be present at all initial classification

committee hearings and at any other classification committee
hearing which could result in an adverse effect upon the inmate."

The CDCR Officials violated the petitioner's Eighth Amendment
right to be free of imminent assault or death, and the courts have
ruled that failing to protect a prisoner amounts to deliberate
indifference to the prisoner's safety. Farmer v. Brennan, 511 U.S.
825 [114 S.Ct. 1970; 128 L.Ed.2d 811]; Noll v. Carlson (9th Cir.
1987) 809 F.2d 1446; Berg v. Kincheloe (9th Cir. 1986) 794 F.2d 457,
459 (claim based on threat of harm sufficient); Vosberg v. Solem
(8th Cir. 1988) 845 F.2d 763, cert. denied, 109 S.Ct. 313; Woodhouse
v. Virginia (4th Cir. 1973) 487 F.2d 889; see also Redman v. San
Diego County (9th Cir. 1991) 942 F.2d 1435.

On February 14, 2002, petitioner was forced to attend a Board
of Prison Terms Hearing from maximum security with the Maximum B
Classification, and was denied due process in all respects.

> "Petitioner is still in custody as a result of the
> 2001 suitability hearing.  That he has had two
> suitability hearings since that time does not render
> his challenge to the 2001 hearing moot." Irons v.
> Warden of California State Prison-Solano (E.D. Cal.
> 2005) 358 F.Supp.2d 936, 948.

On February 14, 2002, the BPT denied petitioner parole for
five years while petitioner was confined in administrative
segregation at HDSP, these actions deprived petitioner of the Due
Process protections affirmed by the Ninth Circuit in McQuillion v.
Duncan, 306 F.3d 895, 902-903.  The petitioner was deprived of any
opportunity to parole consideration due to his Maximum B custody,
and denied due process. McCullough v. Kane Slip Copy, 2007 WL
1593227 (N.D.Cal.); Martin v. Marshall, 431 F.Supp.2d 1038, on
reconsideration 448 F.Supp.2d 1143.

1    Furthermore, the petitioner's second degree murder conviction

2    of one Dennis Brown (ex-convict on parole for robbery) had clear

3    evidence from the prosecution witnesses, that, Brown had pushed

4    the petitioner with a raised beer bottle after it was alleged that

5    petitioner broke a beer bottle over his own head in a drunken show

6    of courage against a group of ex-convict Bikers.    That Brown

7    raised a beer bottle to hit petitioner, and eventually stabbed the

8    petitioner in the back.    This is the prosecution's version, and the

9    petitioner has always maintained that, Dennis Brown and his Biker

10   friends were assaulting teenagers at the scene (park), and the

11   petitioner was truthfully attempting to break up, duel with knives,

12   when Dennis Brown stabbed him in the back.    Tony Johnson another

13   teenager at the park, kicked Brown, and petitioner stabbed Brown

14   in self defense after being stabbed in the back and knocked to his

15   knees by the confrontation which had ensued. In re Wen Lee, 143

16   Cal.App.4th 1400; In re Elkins, 144 Cal.App.4th 475.

17            "Challenges to parole proceedings are cognizable
         in habeas.  Here the respondent challenge parole
18       determinations that not only deny release (or
         eligibility for consideration for release) but also
19       guarantee continued confinement until the next
         scheduled parole proceeding.  See ante, at 1244-1245
20       (majority opinion).  If a parole determination is made
         in a proceeding flawed by errors of constitutional
21       dimensions, as these respondents now allege, their
         continued confinement may well be the result of
22       constitutional violation.  Respondents thus raise
         a cognizable habeas claim of being "in custody in
23       violation of the Constitution." 28 U.S.C. §2241(c)
         (3); ...." Wilkinson v. Dotson, 125 S.Ct. 1242, 1252.
24
25   Furthermore, the petitioner voluntarily surrendered to the

26   police on September 10, 1980, under arrangements through an

27   attorney at Encino Hospital where he was treated for the stab

28   wound to his back, which was stipulated to by the prosecution.

1                  "THE COURT: Did he surrender himself to the police?"

2                  "THE WITNESS:  Yes, Sir."

3                  "MR. MAY: Stab wound to the back.  Located in the
                 upper right region of the shoulder blade."

4

                 "MR. GENELIN: No objection, and I would enter that

5                  stipulation." (Preliminary Hearing Trans. pp. 116-117.)

6     The Biker, Harley Spack, was the central witness for the

7 prosecution, since he admitted to throwing the knife to Dennis

8 during the altercation, and that Brown "sliced" petitioner with the

9 knife.  Further, Harley Spack was an ex-convict and friend of

10 Dennis Brown.  (RT 550-Z, 550-A):

11                  "A.  I was convicted of interstate transportation of
                 a stolen vehicle, robbery second degree."

12

                 "THE COURT:  That was in California?"

13

                 "THE WITNESS:  The robbery, yes, that was in the State

14                  of California.  And, mail theft."

15                  Q. BY MRS. D'AGOSTINO: (Prosecutor) When was that?"

16                  "A.  The mail theft was the last one.  I just
                 finished doing time for that in '78 or '79.  I just

17                  got out on it."

18     In his taped statement to the police Harley Spack states that,

19 after tossing his knife to Dennis Brown, that Brown "sliced" the

20 petitioner.  (RT 2670):

21                  "Q. Did Dennis catch your knife or pick it up or
                 what?  And his response was, "And Dennis caught it

22                  and had it in his hand.  That's how the dude got
                 sliced on his arm, and we kept just backing up."

23

24     Prosecution witness and Biker girlfriend, Denise Di Piero,

25 testified that, Dennis Brown had "slashed" the petitioner.

                 "Q. Let me stop you.  Before that, did you ever see

26                  Dennis using his knife on Richard Crane?"

27                  "A. Just -- he swung at him once, I think, once or
                 twice, and slashed him across the arm."

28

"THE COURT:  So, he did make contact with Crane's body with the knife?"

"THE WITNESS:  Yes."

"THE COURT:  And that was about the right shoulder."

"THE WITNESS:  Yeah." (RT 1611-1612.)

## CONCLUSION

For the foregoing reasons, petitioner's present confinement pursuant to his conviction in Case No. A146112 is presently illegal, and a writ of habeas corpus should issue.

Dated: August 25, 2008

Respectfully submitted,

Richard J. Crane, in pro se

## VERIFICATION BY DECLARATION

I, Richard J. Crane, declare under the penalty of perjury pursuant to 28 U.S.C. Section 1746, that: I am the Petitioner in this action, that the foregoing allegations and statements are true and correct of my own knowledge, except as to those matters stated on my information, and belief, and as to those matters, I believe they are true.

Dated: August 25, 2008

_____
Richard Joseph Crane

# EXHIBIT A

**INMATE/PAROLEE APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region
1. HDSP/C
2.

Log No.
1. 01-03292
2.

Category
15

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|-----------|------------------|
| RICHARD JOSEPH CRANE, 2. | C-44519, | Voc. Carpentry | C2 #209 |

A. Describe Problem: This is an "Emergency Appeal(s)" pursuant to CCR §3084.7. (a)
(1) (A) (B).    The appellant was transferred to HDSP from CSP-LAC, on May
9th, 2001, on the same CDC Bus as a documented enemy, inmate Baca, #P-38698
On February 11, 2000, inmate Baca #P-38698, and other Hispanic inmates
attacked the White inmates at CSP-LAC, Facility 'A', in a major riot.
Baca received a CDC 115 for the assault (riot), and appellant did not.
While housed several cells away from Baca during the riot incident, Baca
and othe Hispanics made more threats out of their cell against appellant.

If you need more space, attach one additional sheet.    [CONTINUED ON ATTACHED PAGE]

B. Action Requested: 1.) That HDSP, and CDC order the forth with transfer of the
appellant to Mule Creek State Prison; 2.) That HDSP, and CDC order in
the alternate that appellant be transferred to CMC-E, since appellant
was housed there for seven (7) years; 3.) No retaliation is taken by CDC.

Inmate/Parolee Signature: Richard J. Crane    Date Submitted: 10/07/2001

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: Bypass

Staff Signature: _____    Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

Bypass

Signature: _____    Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number: _____

RECEIVED NOV 26 2001 LEGAL AFFAIRS

01 OCT 15 AM 8 Inmate APPEALS BRANCH

EXHIBIT

_evel    ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____

EVIEWER'S ACTION (Complete within 15 working days): Date assigned: _____ Due Date: _____

rviewed by: _____

_____

_____

**Bypass**

_____

Signature: _____ Title: _____ Date Completed: _____
ion Head Approved: _____ Returned
ature: _____ Title: AW GAT _____ Date to Inmate: 11-6-01

dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of
ceipt of response.

**Bypass**

_e: _____ Date Submitted: _____

nd Level    ☐ Granted    ☒ P. Granted    ☐ Denied    ☐ Other _____

EVIEWER'S ACTION (Complete within 10 working days): Date assigned: 10/16/01    Due Date: 11/30/01
ee Attached Letter    _____ PW/AT 11-6-01

ature: K Baughman CCII    Date Completed: 10/31/01

len/Superintendent Signature: _____    Date Returned to Inmate: 11/9/01

dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of
sponse.

Dissatisfied. K. Baughman did not interview
ppellant, but merely told him at committee "The
CC would act as the interview," one minute long.
Further, appellant was in PHU and recieved an over-
de for PHU at CMC-E when DVI PHU was order-
d closed by the Court 1983. Bacca was an enemy.

ature: Richard J Crowl    Date Submitted: 11-17-01

ne Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

CTOR'S ACTION:  ☐ Granted    ☐ P. Granted    ☒ Denied    ☐ Other _____
ee Attached Letter

IC 632 (12/87)    Date: APR 1 6 2002

**A. Describe Problem:** (Continued)  On March 6th, 2000, appellant wrote to M. Yarborough, Warden, (CSP-LAC), and told him about Baca's threats to continue the riot.  M. Yarborough, wrote appellate a letter dated April 12, 2000, and moved inmate Baca off 'A' Facility.  The Facility 'A' was on lock down.

On April 30, 2001, on 'D' Facility CSP-LAC, appellant wrote to M. Yarborough, and other officials explaining that, Baca, #P-38698, was on the same Yard as appellant and was threatening the appellant.  The appellant was sent to Administrative Segregation for protective custody on May 1, 2001.  On May 9th, 2001, the appellant was taken from Ad. Seg. and placed in the front caged area on the same CDC Bus as inmate Baca to High Desert State Prison.

On the CDC Bus, inmate Baca, told other Southern Mexicans that appellate was a snitch, and was his enemy after the riot with the Whites at CSP-LAC.

Further, the appellant testified in Court against his codefendant, William Shively, (a member of the American Nazi Party), and appellant has been in protective custody status since reception into CDC in 1982.  The appellant was housed in PHU (Palm Hall), and PHU (DVI West-East Hall), and later CMC alternate sensitive needs placement.  The appellant's codefendant is well known to White Supremacist gangs, and is affiliated with many gangs.  The appellant has a 'Rat Jacket.'

White inmates have asked to see appellant's trial testimony, but appellate told them he would get it from home in the mail. Therefore, the White inmates are going to stab the petitioner for being a snitch.

In a letter dated May 15, 2001, M. Yarborough, wrote to appellant and told him that: "As a General Population inmate on Facility 'D' you were endorsed by Classification Staff Representative (CSR) for Mule Creek State Prison (MCSP) and on May 9, 2001, you were transferred to facilitate this change." (Note: Mule Creek State Prison, is sensitive needs)

The appellant is being housed in prison in violation of the Eighth Amendment, since it is obvious that he will be attacked or stabbed by General Population inmates at HDSP, as he is a PC case.

"It is not necessary to show that all prisoners suffer a pervasive risk of harm.  It is enough that an identifiable group of prisoners do, if the complainant is a member of that group." Vosburg v. Solem, 845 F. 2d 763, p. 766.

Respectfully submitted,

DATED: 10/07/2001

RICHARD J. CRANE

State of California

Department of Corrections
High Desert State Prison

# Memorandum

Date    :    November 5, 2001

To    :    Inmate Crane, J. C-44519
Housing Unit  FDB8-106

Subject:    **SECOND LEVEL APPEAL RESPONSE**
**HDSP APPEAL LOG # HDSP-C-01-03292**

APPEAL DECISION:  Appeal partially granted.

APPEAL ISSUE:  You state that you were transferred to HDSP from LAC with an enemy, and that you were transported on the same CDC bus, which has resulted in creating enemy concerns for you at HDSP.  You request that you be transferred to MCSP or an alternate of CMC-E III.  You also request that no retaliation be taken by CDC for filing this appeal.

APPEAL RESPONSE:  Mr. Crane, in reaching a decision on your appeal, your CDC-602 and its attachments, your central file, applicable sections of the California Code of Regulations (CCR) Title 15, Department Operations Manual (DOM), and your interview with K. Baughman, CCII, were reviewed and considered.

On Thursday, October 25, 2001, during your interview with K. Baughman, CCII, you stated that you could not remain within the HDSP general inmate population due to developing enemy concerns within HDSP.  Your enemy concerns were directly related to an inter-racial riot, which occurred at CSP-LAC.

You stated that you brought this issue to HDSP staff.  You informed staff you had non-specific enemy concerns at HDSP.  CCI Gunter reported that you had stated you had enemy concerns; however, you could not specifically identify any enemies.  On 10-16-01 you identified inmate Bacca, P-38698, as your enemy.  You stated that the enemy situation resulted from an inter-racial riot at CSP-LAC, and a statement that inmate Bacca made on the CDC transportation bus to other inmates that you were a snitch.  You have further stated that you have several enemies resulting from your testimony in open court against your crime partner.

As explained to you on 10-25-01, there is no supporting documentation in your C-file that would support this new revelation that you consider inmate Bacca is your enemy.  However, to take the conservative approach, Bacca has been placed on your CDC 812.  You received an intra-facility move to Facility B, where you had no documented enemies prior to being placed into ASU.  Further, you have been housed within the inmate general population since your conviction of 17 years ago.  During those 17 years you have been housed within the inmate general population.  You have not been placed into any protective housing.  Enemies that you have identified from your instant offense have been documented.

C-01-03292
* CDC 1617

Inmate Crane, C-44519
Page 2

You have been placed into Administrative Segregation pending a complete investigation into your enemy concerns that you feel have recently developed since arriving at HDSP.

Based on the information above your appeal has been partially granted. No retaliation by CDC for submitting this appeal will occur. Your request for transfer to MCSP with an alternate of CMC-E cannot be granted at this time. Your claims of additional enemy concerns are currently under investigation. The investigation, when completed, will assist ICC in making a determination on where you will be appropriately housed.

If you are dissatisfied with this appeal response, you may appeal to the Director's Level by following the instructions on the back of your appeal form.

A. J. MALFI
Chief Deputy Warden(A)

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

# DIRECTOR'S LEVEL APPEAL DECISION

Date: APR 1 8 2002

In re:  Crane, C-44519
High Desert State Prison
PO Box 750
Susanville, CA 96127-0750

| IAB CASE NO. | 0105059 |
|---|---|
| LOCAL LOG NO. | HDSP 01-03292 |
| LOCAL LOG NO. | |
| LOCAL LOG NO. | |
| APPEALS EXAMINER | C. Dahlberg, Captain |
| APPEAL CATEGORY | Transfer |

This matter was reviewed on the existing record on behalf of the Director of the California Department of Corrections (CDC).

I    **APPELLANT'S ARGUMENT:** He claims that he was transferred to High Desert State Prison (HDSP) on the same bus as a documented enemy. The appellant alleges that the institution is in violation of the regulations and state law by not transferring him. He contends that the denial of transfer to the prison of his choice is a violation of his rights.

A.  **APPELLANT'S REQUEST:** He requests immediate transfer to Mule Creek State Prison (MCSP) or to California Men's Colony (CMC) and that no retaliation be taken against him for use of the appeals system.

II    **SECOND LEVEL DECISION:    GRANTED IN PART**

III   **SECOND LEVEL ARGUMENT:** The appellant was endorsed for transfer to an institution through Classification Staff Representative (CSR) action. There is no documentation supporting the appellant's contention that Inmate Bacca, P-38698, is an enemy, however, Inmate Bacca's name has been placed on the appellant's CDC Form 812, Notice of Critical Information-Safety of Persons (Nonconfidential Enemies). There is no supporting documentation in the appellant's central file that would support the new revelation that Inmate Bacca is his enemy. The appellant had no documented enemies in Facility "B" prior to his placement in the ASU. The appellant has been housed within the general inmate population since his conviction 17 years ago. He has not been placed into any protective housing. Enemies that he has identified from his instant offense have been documented. No retaliation for submitting this appeal will occur. The appellant's request for transfer to MCSP or CMC cannot be granted at this time. His claims of additional enemy concerns are under investigation. The investigation, when completed, will assist Institution Classification Committee in making a determination on where he will be properly housed.

IV   **DIRECTOR'S LEVEL DECISION:    DENIED**

All submitted documentation and supporting arguments of the parties have been considered.

A.  **REASONS FOR DECISION:** The Second Level Response is appropriate and the decision is based upon a reasonable penological interest. It represents CDC's position. The appellant is appropriately housed. The appellant was endorsed for transfer to an institution through CSR action. The appellant is entitled to an annual review, and appropriate action through classification committee will be conducted during that review. He is encouraged to program and remain disciplinary free enhancing his possibility for transfer consideration to a facility that he requests upon his next annual review. The appellant has failed to present compelling evidence and convincing argument to warrant modification of the decision reached by the institution.

B.  **REGULATORY AND/OR LEGAL FOUNDATION(S) FOR THE DECISION:**

| CA Code of Regulations | 3375, 3378, 3379 |
|---|---|
| CDC Operations Manual | |
| OTHER | |

**V.    DIRECTOR'S LEVEL ORDER**
No order is necessary.

This decision exhausts the administrative remedy available to the appellant within CDC.

LINDA L. RIANDA, Chief
Inmate Appeals Branch

cc:  Warden, HDSP
Appeals Coordinator, HDSP

# EXHIBIT B

Dept. of Corrections,
Calif. State Prison - Los Angeles Co
44750  60th Street West,
Lancaster, Ca 93536-7620

Richard J. Crane, D-41919,
CSP-LAC, Facility "D" Bldg 4, #150,
44750  60th Street West,
Lancaster, Ca. 93536-7620

April 30, 2001

Dear Mr. Yarborough:

I am writing this letter requesting it remains "CONFIDENTIAL
MATERIAL," pursuant to CCR Title 15 § 3321 (1) (2).

You responded to my letter dated March 6th, 2000, on April 12, 2000,
and moved inmates, Baca, #P-30698, and Ulloa, #-32688, from "A" Facility
following the riot.

Well!  I am housed on "D" Facility, and inmate Baca, is housed here in
4 Building.  His friends are threating to stab me here on "D" Facility.

I need to be removed from "D" Facility, ASAP. My life is in jeopardy,
and I have to be transferred off of "D" Facility.

Please!  move me to either "A" or "C" Facility ASAP.  I was assaulted
by inmate Brady on "C" Yard, and he was moved to "D" Yard.  I was moved here.
Therefore, I cannot go to "D" Yard.

The "D" Yard is on lockdown now, and this is a perfect time to move
me.  Please!  Don't make it known that I am P.C.ing, since that will follow me

I was endorsed for transfer to Calipatria last week, and I am hoping I will
not have a PC jacket.

Please!  have your Officers indicate I am being moved to make room for
a SNY inmate, since I am up to transfer.  Or, that it is an Administrative
move for any reason.  So, I don't get a PC jacket to follow me.

Thank you very much for your time.  Sir.

cc: Captain Downs, CSP-LAC, "D" Facility.
Ba     Director of Corrections, P.O. Box, 942883,
       Sacramento, Ca. 94283-0001

       Respectfully,

                              Richard J. Crane

EXHIBIT

# EXHIBIT C

STATE OF CALIFORNIA—YOUTH AND ADULT CORRECTIONAL AGENCY

GRAY DAVIS, Governor

**DEPARTMENT OF CORRECTIONS**
**California State Prison-Los Angeles County**
**44750 60th Street West**
**Lancaster, CA 93536-7620**
**Telephone: (661) 729-2000**



May 15, 2001

Inmate Crane, R., C-44519
FCB2-209U
Mule Creek State Prison
P.O. Box 3030
Susanville, Ca. 96127

Inmate Crane:

This is in response to your letter dated April 30, 2001, regarding your endorsement for transfer to California State Prison-Corcoran.

California State Prison-Los Angeles County (LAC) was assigned a mission change wherein the transfer of about 600 inmates into and out of LAC was required. In order to accomplish this mission change inmates not meeting the new criteria or here at LAC on hardships were endorsed for transfer. As a General Population inmate on Facility 'D' you were endorsed by the Classification Staff Representative (CSR) for Mule Creek State Prison (MCSP) and on May 9, 2001, you were transferred to facilitate this change.

If you have any questions or need additional information, please contact your assigned Correctional Counselor I at MCSP.

**M. YARBOROUGH**
Warden (A)
CSP-Los Angeles County



# EXHIBIT D

Richard J. Crane, #C-44519,
CSP-LAC, FD, B3, #136,
44750  60th St. West,
Lancaster, Ca. 93536

Mr. McGinnis, CCI,
CSP-LAC, FD, B3,
44750  60th St West,
Lancaster, Ca. 93536

April 31, 2001

Dear Sir:

On April 30, 2001, I wrote to Mr. Yarborough, Warden, and explained how my life was in danger.

Please!  Keep this Confidential pursuant to CCR Title 15, §3321 (1)(2).

My life is in "Jeopardy" and I will be stabbed if I remain on the Facility "D".

I have enemies here on "D" Facility from "A" Facility, and Mr. Yarborough is aware of the circumstances, since Mr. Yarborough helped me a year ago when these same individuals, who were in the riot made threats that they were going to get me and other Whites later.

I mailed a letter to Mr. Yarborough, last night, with a copy to the Director, and one copy to Cap. Downs.  Please!  Have me move to another yard before the lockdown is over

Thank you very much for everything.

Respectfully,

Richard J. Crane

# EXHIBIT E

1  Richard J. Crane, #C-44519,
2  Salinas Valley State Prison,
   Fac. 'A' Bldg.#5, cell #148,
3  P.O. Box 1030, Soledad, CA 93960

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11

12  RICHARD JOSEPH CRANE,          )
                                   )
13      Plaintiff,                 )    NO. CIV.S-02-2203 MCE KJM-P
                                   )
14      vs.                        )
                                   )    AFFIDAVIT OF  GARY  JACOBS
15  D.L. RUNNELS, et al.,          )
                                   )
16      Defendant(s).              )
                                   )
17  _____

18      I, Gary  Jacobs, do hereby affirm/declare under the

19  penalty of perjury as follows:

20      1. I am an inmate in the California Department of

21  Corrections, CDC No. D68846,  presently confined at Salinas

22  Valley State Prison, Facility 'A' Building No. 1, cell #219

23      2. On Feb. 23,  1999, I was housed in Salinas Prison as a

24  general population classified inmate; yet, I was stabbed by

25  another white inmate for being an informant.

26      3. May 09, 2001, I was housed at High Desert State Prison

27  Facility 'D' orientation with inmate Richard Crane.

28

                              1

4.  On approx., Feb. 23, 1999, I was stabbed by a white inmate twice, because a Correctional Officer wrote a CDC 115 write-up against a Southern Mexican inmate with my name on it as the informant, and left the CDC 115 where the inmates obtained possession of it at Salinas Valley State Prison.

5.  I was transferred to Lancaster Prison and requested protective custody status and transfer to Mule Creek, but was denied and transferred to High Desert State Prison.

6.  On May 09, 2001, I was transferred to High Desert State Prison, and was transferred to 'C' Facility with inmate Richard Crane.

7.  June 2001 I was stabbed in the shoulder at High Desert State Prison on 'C' Fac., due to the fact I had been accused of being an informant previously.

I, Gary Jacobs, do hereby declare and affirm under the penalty of perjury that the foregoing is true and correct. Dated: May 13,  2004.


_Gary Jacobs_
Gary Jacobs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

RICHARD JOSEPH CRANE,

     Plaintiff,

v.

                         Case Number: CIV.S-02-2203 MCE KJM -P

D.L. RUNNELS, et al.,

     Defendant(s).

PROOF OF SERVICE
BY MAIL

I hereby certify that on **May   18,    2004**, I served a copy

of the attached   **AFFIDAVIT OF GARY   JACOBS**,

by placing a copy in a postage paid envelope addressed to the person(s) hereinafter listed, by

depositing said envelope in the United States Mail at   **Salinas Valley State Prison**:

         DAVID A. CARRASCO, Deputy Attorney General
         Attorney General's Office for the State of California
         P.O. Box 944255
         .1300  'I' Street
         Suite  125
         Sacramento,  CA  94244-2550

I declare under penalty of perjury that the foregoing is true and correct.

Dated: **May   18, 2004**

                              Richard J. Crane

1     Richard J. Crane, #C-44519,
      Salinas Valley State Prison,
2     Fac. 'A' Bldg.#5, cell #222,
      Soledad, CA 93960-1050

3

4

5

6

7

8               UNITED STATES DISTRICT COURT

9               EASTERN DISTRICT OF CALIFORNIA

10

11

12 RICHARD JOSEPH CRANE,       )   No.Civ.S-02-2203 MCE KJM P
                           )
13     Plaintiff,            )      AFFIDAVIT OF
                           )      GARY JACOBS
14     vs.                    )
                           )
15 D.L. RUNNELS, Warden, et al.,   )
                           )
16     Defendant(s)         )
                           )
17 _____ )

18      I, Gary Jacobs, declare under the penalty of perjury

19 as follows:

20      1.  I am incarcerated at Salinas Valley State Prison

21 under CDC No. D-68846, in Soledad, California.

22      2.  On May 09, 2001, I was transferred to High Desert

23 State Prison from Lancaster Prison on the same bus as Richard

24 Crane, and was transferred to 'C' Facility.

25      3.  June 2001 I was stabbed on 'C' Facility due to the

26 fact I had informed on another inmate prior to arriving at

27 High Desert State Prison, and should have been in protective

28 custody.

4.   June 2001 after being stabbed I was confined in administrative segregation at High Desert State Prison and moved to Facility 'D' eventually building 5.

5.   August 2002, approximately while housed in building 5 the Correctional Officers ordered myself and all inmates in the section I was housed in to scrape all of the black paint off of cell areas, bunks, table, with cleaning compound or I would be confined on lockdown status.

6.   The actions and failure to act by transferring me out of High Desert State Prison caused me great emotional distress and humiliation and extended lockdown confinement.

7.   The actions of housing me on High Desert State Prison Facility 'C' knowing I had informed on other inmates and would be stabbed there,   caused me great emotional distress and pain an suffering.

8.   I am willing to testify to these events of my own knowledge.

I, Gary Jacobs, declare under the penalty of perjury that the foregoing is true and correct.

Dated: May 10, 2005.

Gary Jacobs, #D-68846

2

# EXHIBIT F

ENDORSED-FILED

NOV 2 0 2001

LASSEN COUNTY SUPERIOR COURT

By _____ Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF LASSEN

In the Matter of the Petition of

RICHARD JOSEPH CRANE

For Writ of Habeas Corpus

Case No. CHW - 1577

ORDER DENYING PETITION
FOR WRIT OF HABEAS CORPUS

Petitioner, in the custody of the California Department of Corrections (CDC) at High Desert State Prison, alleges that he is a protective custody or sensitive needs inmate who is inappropriately housed at that facility and seeks transfer to a prison consistent with his sensitive needs and medium "A" custody status. He alleges having filed an emergency appeal pursuant to 15 CCR §3084.7 (a) on October 7, 2001, of equal date with his petition for writ of habeas corpus; the petition does not reflect the action taken upon that appeal. As the petition was filed without waiting for action upon petitioner's emergency appeal, it does not demonstrate exhaustion of administrative remedy, and will be denied (In re Dexter (1979) 25 Cal. 3rd 921; In re Muszalski 52 Cal. App. 3rd 500) without prejudice.

Dated: 11/19/01

_____
Superior Court Commissioner

# EXHIBIT G

STATE OF CALIFORNIA
NOTICE OF CRITICAL CASE INFORMATION - SAFETY OF PERSONS                    DEPARTMENT OF CORRECTIONS
CDC 812 (4/89)

This non-confidential form is used to document inmates/parolees or potential inmates who should be kept separate and inmates/ parolees suspected of affiliation with a prison gang or disruptive group. If an inmate/parolee is identified with a prison gang, a Notice of Critical Information - Prison Gang Identification (Form CDC 812-A) shall also be completed. A form CDC 812-B shall be completed on Disruptive Group Affiliates. Indicate "NONE" under CDC number and/or group section if there are no enemies and/or gang concerns.

| NONCONFIDENTIAL ENEMIES | | | DATE 9/10/97 COFO CIFO | DATE 7-15-99 COFO | DATE 12-6-00 COFO | DATE |
|---|---|---|---|---|---|---|
| CDC NUMBER | PRINT NAME | PRIMARY SUPPORTING DOCUMENTATION | CURRENT LOCATION | CURRENT LOCATION | CURRENT LOCATION | CURRENT LOCATION |
| C-44851 | SHIVELEY | PDR Pg 15, 16, 19 | CCI 4B | | CAL | |
| C44851 | SHIVELEY | POR | | SVSP | CAL | |
| C33120 | Smith | DC 115 dated 9-6-44 | | Reg I | Reg I | |
| U/Known | Simmons | CDC 115 dated 8-26-84 | | Reg I DSH | DSH | |
| C39226 | Ortega | CDC 115 dated 4-7-83 | | 7-13-97 DSH II | DSH | |
| C71637 | Evans | CDC 115 dated 2-9-84 | | 9-21-90 DSH II | DSH | |
| C30014 C15232 J33106 | Jackson | CDC 115 dated 5-20-84 | | Reg I DSH II | Reg 4 | |
| C60b48 | Aguilar | CDC 115 dated 7-20-84 | NCCC | | DVI | |
| D16786 | Brady | 128-B-8-29-00 | 0 77-B ACIV | 33-133 LAC-4 | B9, 133 LAC II | |

**DELETION OF PRIOR ENEMIES**

Simmons unable to locate on KCMS/ COTO  7-26-99   R. Hughes

COMMENTS

**SUSPECTED GANG AFFILIATION**

| GANG | TYPE OF AFFILIATION (MEMBER/ASSOCIATE/DROPOUT) | PRIMARY SUPPORTING DOCUMENTATION | DATE |
|---|---|---|---|
| DISRUPTIVE GROUP A.B. Assoc. PRISON GANG | EX Assoc. | Conf. memo dtd 6/11/92 PDR Pg 20 | 2/17/96 |

COMMENT
"S" Brother Robert Crane and Co-Defendant Shiveley are A.B. assoc.

**STAFF COMPLETING UPDATE**

| PRINT NAME AND WRITE INITIALS | | TITLE | INSTITUTION/REGION | DATE |
|---|---|---|---|---|
| R. Hughes | RNH | CCI | LAC-IV | 7-15-99 |
| R. DAVIS | RD | CCI | LAC IV | 12-6-0 |
| E. Carr | EC | SC | LAC IV | 8-15-0 |

| CDC NUMBER | INMATE/PAROLEE'S NAME | | | |
|---|---|---|---|---|
| C44519 | CRANE | | PAGE 1 OF 1 | |

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

## NOTICE OF CRITICAL CASE INFORMATION - SAFETY OF PERSONS
CDC 812 (4/91)

This non-confidential form is used to document inmates/parolees or potential inmates who should be kept separate and inmates/parolees suspected of affiliation with a prison gang or disruptive group. If an inmate/parolee is identified with a prison gang, a Notice of Critical Information - Prison Gang Identification (Form CDC 812-A) shall also be completed. A form CDC 812-B shall be completed on Disruptive Group Affiliates. Indicate "NONE" under CDC number and/or group section if there are no enemies and/or gang concerns.

| NONCONFIDENTIAL ENEMIES | | | DATE CDFG KCMJ 4/10/01 CURRENT LOCATION | DATE CDFQ 5/14/01 CURRENT LOCATION | DATE CDFA 10/24/01 CURRENT LOCATION | DATE CDFA 11-16-0 CURRENT LOCATION |
|---|---|---|---|---|---|---|
| CDC NUMBER | PRINT NAME | PRIMARY SUPPORTING DOCUMENTATION | | | | |
| C 44851 | SHIVELEY | PAR PG 15,16,19 128 B on 3-23-82 | CAL | CAL | CAL | CAL |
| C 33120 | SMITH | RVR CDC 115 9-03-84 | DISCH | Disch | Disch | Disch |
| UNKNOWN | SIMMONS | RVR CDC 115 8-26-84 | UNKNOWN | unknown | Unk. | unk |
| C 39226 | ORTEGA | CDC 115 128 PG 7/7/83 | DISCH | Disch | Disch. | Disch |
| C 71637 | EVANS | CDC 115 2-8-84 | DISCH | Disch | Disch. | Disch |
| J 30014 | | CDC 115 | | | | |
| C 75232 | JACKSON | 5-20-86 | RES4 | Parole Res4 | Reg.4 | Reg.4 |
| J 38906 | | CDC 115 | | | | |
| C 60648 | AGUILAR | 9-20-84 | DISCH | DUE-RC | Reg.1 | Reg.1 |
| D4C786 | BRADY | 128B 8-29-00 | RC 03/13B | LAC | SAC | SAC |
| K 51954 | | See C 128 B on | | | | |
| C 69795 | MUIRHEAD | CDFQ 128-27-92 | DISCH 1987 PAR | Parole Reg.4 | Reg.4 | Reg.4 |
| P 38609B | Bacca | 128 b  10/16/01 | | | HDSP C-7 | HDSP C-113 |

### DELETION OF PRIOR ENEMIES

COMMENTS

| SUSPECTED GANG AFFILIATION | | | |
|---|---|---|---|
| GANG | TYPE OF AFFILIATION (MEMBER/ASSOCIATE/DROPOUT) | PRIMARY SUPPORTING DOCUMENTATION | DATE |
| DISRUPTIVE GROUP PRISON GANG  A.B. ASSOC. | EX ASSOC. | CONF MEMO dtd 4/19/01 PAR pg 10 | 4/19/0 |

COMMENT

"S" BROTHER ROBERT CRANE AND CODEFENDANT SHIRLEY ON A.B.

| STAFF COMPLETING UPDATE | | | |
|---|---|---|---|
| PRINT NAME AND WRITE INITIALS | TITLE | INSTITUTION/REGION | DATE |
| J. McGUINNESS, [initials] | CC I | LAC-IV | 4-17-0 |
| L L Wagner   HW | C C I | HDSP | 5/14/01 |
| M Dangler   MD | CCI | HDSP | 10-24-01 |
| M Dangler   MD | CCI | HDSP | 11-16-01 |

| CDC NUMBER | INMATE/PAROLEE'S NAME | | |
|---|---|---|---|
| C 44819 | CRANE | | PAGE 1 OF 1 |

STATE OF CALIFORNIA
NOTICE OF CRITICAL CASE INFORMATION – SAFETY OF PERSONS    DEPARTMENT OF CORRECTIONS
CDC 812 (1/00)

This non-confidential form is used to document inmates/parolees or potential inmates who should be kept separate and inmates/parolees suspected of affiliation with a prison gang or disruptive group. If an inmate/parolee is identified with a prison gang, a Notice of Critical Information – Prison Gang Identification (Form CDC 812-A) shall also be completed. A form CDC 812-B shall be completed on Disruptive Group Affiliates. Indicate "NONE" under CDC number and/or group section if there are no enemies and/or gang concerns.

| | | | DATE | DATE | DATE | DATE | DATE |
|---|---|---|---|---|---|---|---|
| NON-CONFIDENTIAL ENEMIES | | | C of Q 12/19/01 | C of Q 1/23/02 | C of R 3-20-02 | C of R 4/16/02 | |
| CDC NUMBER | PRINT NAME | PRIMARY SUPPORTING DOCUMENTATION | CURRENT LOCATION | CURRENT LOCATION | CURRENT LOCATION | CURRENT LOCATION | CURRENT LOCATION |
| C-44851 | Shirley | POR Pg.15,16,19 128B 3-23-82 | CAL | CAL | CAL | CAL | CAL |
| C-33120 | Smith | RVR 9.10.84 | Disch 8/9/00 | Disch 8/9/00 | Disch | Disch | Disch |
| Unk | Simmons | RVR 8.26.84 | Unable to ID | | UNK | UTID | |
| C-31226 | Ortega | RVR 9.7.83 | Disch 7/13/87 | 7/8/87 Disch | Disch | Disch | Disch |
| C-71637 | Evans | RVR 2.9.84 | Disch 9/27/90 | Disch 9/27/90 | Disch | Disch | Disch |
| C-15232 | Jackson | RVR 5.20.84 | Reg IV PAC | 20610 PAC | Reg 4 | PAC Reg 4 | PAC Reg 4 |
| J-38906 | | | | | | | |
| S-40148 | Aguilar | RVR 7.20.84 | Reg 1 | DVI-RC | Reg 1 | Reg 1 | Reg 1 |
| H-46786 | Brady | 128B 8.29.00 | ESP-SAC | SAC | SAC | SAC | SAC |
| H-51954 | Muirhead | 128B 4-26-01 | Reg IV | REG III | Reg 4 | Reg-1 Absent | Reg 4 |
| P-38698 | Bacca | 128B 10.16.01 | HDSP 062216 | HDSP D7 224C | HDSP D7 126 | HDSP D7 126 | |

DELETION OF PRIOR ENEMIES

COMMENTS

SUSPECTED GANG AFFILIATION

| GANG | TYPE OF AFFILIATION (MEMBER/ASSOCIATE/DROPOUT) | PRIMARY SUPPORTING DOCUMENTATION | DATE |
|---|---|---|---|
| DISRUPTIVE GROUP A.B. Ex. Assoc. PRISON GANG | By Assoc. | CAR 6.11.92 POR Pg. 2.0 | 12-18-01 |

COMMENT
"S" Brother Robert Crane and Co-Def. Shirley an A.B. Asso.

STAFF COMPLETING UPDATE

| PRINT NAME AND WRITE INITIALS | | TITLE | INSTITUTION/REGION | DATE |
|---|---|---|---|---|
| J. Robertson | | CCI | HFSP | 12/19/01 |
| B. Tilford | BT | CCII | HDSP IV | 1/23/02 |
| M.Dangler | MD | CCI | HDSP | 3.20.02 |
| B. Tilford | BT | CCI | HDSP | 4/16/02 |

| CDC NUMBER | INMATE/PAROLEE'S NAME | | PAGE ___ OF ___ |
|---|---|---|---|
| C-44519 | Crane | | |

# EXHIBIT H



1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

11   RICHARD JOSEPH CRANE,              ) Case No. CV 05-8534 JSL(JC)
12                    Plaintiff,         )
                                         ) REPORT AND RECOMMENDATION
13            v.                         ) OF UNITED STATES MAGISTRATE
                                         ) JUDGE
14   M. YARBOROUGH, et al.,              )
15                    Defendants.        )
16   ────────────────────────────────── )

17        This Report and Recommendation is submitted to the Honorable

18   J. Spencer Letts, United States District Judge, pursuant to 28 U.S.C. § 636 and

19   General Order 05-07 of the United States District Court for the Central District of

20   California.

21   **I.   SUMMARY**

22        On June 12, 2006, plaintiff Richard Joseph Crane ("plaintiff") filed a pro se

23   civil rights amended complaint pursuant to 42 U.S.C. § 1983 ("First Amended

24   Complaint" or "FAC"), to which he appended multiple exhibits ("FAC Ex.").

25        The First Amended Complaint alleges that officials employed at the

26   California State Prison-Los Angeles County ("CSP-LAC"), namely Associate

27   Warden M. Yarborough, Captain D.K. Downs, and Correctional Counselor J.

28

1

1  McGuinness (collectively "defendants"),[1] violated plaintiff's civil rights in

2  connection with plaintiff's transfer to, and retention in administrative segregation

3  at the High Desert State Prison ("HDSP").[2]  Plaintiff sues defendants in their

4  individual and official capacities.

5      Construed liberally, the First Amended Complaint alleges that

6  (1) defendants deprived plaintiff of his Eighth Amendment right not to be

7  subjected to cruel and unusual punishment by allowing plaintiff to be transferred

8  to HDSP with a known enemy inmate (FAC ¶¶ 37-43); (2) defendants deprived

9  plaintiff of his Eighth Amendment right not to be subjected to cruel and unusual

10 punishment by forcing plaintiff to seek confinement in administrative segregation

11 at HDSP for his protection (FAC ¶ 48); and (3) defendants violated plaintiff's

12 right to due process by depriving him of protected liberty interests in (a) being free

13 from administrative segregation (FAC ¶¶ 50-52, 57); and (b) being released/

14 considered for release on parole.[3]  (FAC ¶¶ 58, 59, 62).  Plaintiff alleges that he

15 has suffered physical, emotional, and psychological injuries as a result of

16 defendants' actions, and seeks injunctive and monetary relief.[4]

17

---

18 [1]Plaintiff also asserts claims against a "John Doe" defendant who was a

19 classification staff representative and endorsed plaintiff's transfer to HDSP.  (FAC

20 ¶¶ 8, 12).

21 [2]"Administrative segregation" is a catch-all phrase for any form of non-

   punitive segregation, e.g., segregation to protect a prisoner from another inmate.

22 See Hewitt v. Helms, 459 U.S. 460, 468 (1983).

23 [3]Although plaintiff's second claim is captioned as an Eighth Amendment

24 claim, plaintiff actually conflates Eighth Amendment and Due Process claims

25 therein.  Both such claims are predicated on plaintiff's confinement in

26 administrative segregation at HDSP.  This court addresses each such constitutional

   claim separately.

27

28 [4]Specifically, plaintiff seeks:  (1) injunctive relief, including an order

   requiring his transfer out of the California Department of Corrections ("CDC")

                                                      (continued...)

                                     2

1    On March 14, 2006, defendants Yarborough and Downs filed a Motion to

2  Dismiss the First Amended Complaint pursuant to F.R.Civ.P. 12(b)(6) (the "First

3  Motion"). The First Motion argues that the First Amended Complaint should be

4  dismissed because (1) it fails to state a claim against defendants Yarborough and

5  Downs in their official capacities based on the Eleventh Amendment, as

6  defendants Yarborough and Downs are not "persons" as contemplated by 42

7  U.S.C. § 1983; (2) it fails to state Eighth Amendment and Due Process claims

8  against defendants Yarborough and Downs in their individual capacities; and

9  (3) defendants Yarborough and Downs are entitled to qualified immunity to the

10  extent they are sued in their individual capacities.

11    On August 16, 2006, plaintiff filed an Opposition to the First

12  Motion ("First Opposition"). Defendants Yarborough and Downs filed a Reply

13  ("First Reply") on August 30, 2006.

14    On September 6, 2006, defendant McGuinness also filed a Motion to

15  Dismiss the First Amended Complaint pursuant to F.R.Civ.P. 12(b)(6) ("Second

16  Motion").[5] Plaintiff filed an Opposition to the Second Motion on October 23,

17  2006 ("Second Opposition"). Defendant McGuinness filed a Reply ("Second

18  Reply") on October 30, 2006.

19    Based upon the court's consideration of the First Amended Complaint, the

20  arguments contained in the Motions, the Oppositions, and the Replies, the

21  applicable law, and for the reasons discussed below, the Motions should be

22  granted in part and denied in part.

23

---

24    [4](...continued)

25  (FAC at 9 ¶ 46, 15); (2) compensatory and punitive damages in unspecified
amounts (FAC at 13 ¶ 60, 14 ¶ 68, 15); (3) reasonable attorney's fees should

26  counsel be appointed (FAC at 15); (4) a favorable judgment in the amount of two

27  million dollars (FAC at 15); and (5) the cost of the suit (FAC at 15).

28    [5]The Second Motion does not raise any new grounds for dismissal that are
not already contained within the First Motion. The First Motion and the Second
Motion will collectively be referred to as "Motions" or "Motions to Dismiss."

3

## II.    THE FIRST AMENDED COMPLAINT

1
2          Plaintiff makes the following allegations in the First Amended Complaint:
3    On March 23, 1982, plaintiff arrived at Chino State Prison and was placed in
4    protective custody because he had testified in court against a prison gang member.
5    (FAC at 6, ¶¶ 18, 24, 25).   Thereafter, plaintiff was housed at CSP-LAC in Facility
6    D.  (FAC, Ex. 1).
7          On the night of April 30, 2001, plaintiff sent to defendant Yarborough, and
8    copied to defendant Downs, a letter requesting that plaintiff be protected from a
9    specific inmate (the "enemy inmate") and certain of the enemy inmate's affiliates,
10   and that plaintiff be transferred out of Facility D.  (FAC at 4, ¶¶ 13, 14, Ex. 1).
11   (FAC at 4, ¶¶ 13, 14).  The next day, plaintiff sent a letter to defendant
12   McGuinness, alerting McGuinness to plaintiff's safety concerns, and requesting
13   that he be moved to protective custody.  (FAC at 4, ¶ 15, Ex. 3).  Plaintiff was
14   taken to the Facility D program office, and then to administrative segregation in
15   Facility A.  (FAC at 4, ¶ 15).
16         On May 2, 2001, defendant Downs interviewed plaintiff, who was then in
17   Facility A, regarding plaintiff's protective custody request.  (FAC at 4, ¶ 16).
18   Plaintiff explained that he was seeking protective custody because he had received
19   threats from the enemy inmate and the enemy inmate's friends.  (FAC at 4, ¶ 16).
20   Defendant Downs told plaintiff that he was being transferred to another facility as
21   a protective custody classified inmate.[6]  (FAC at 4, ¶ 16).  Defendants did not
22   document plaintiff's aforementioned safety concerns regarding the enemy inmate
23   and his affiliates in plaintiff's central prison file.  (FAC Exs. 5, 6).
24         On May 9, 2001, plaintiff was removed from administrative segregation at
25   CSP-LAC and placed on a prison bus destined for HDSP.  (FAC at 4, ¶ 17).
26   Plaintiff sat in a front caged-in section of the bus which was designated for
27   protective custody or administrative segregation inmates.  (FAC at 5, ¶ 19).  The

28
---
     [6]Defendant Downs allegedly told plaintiff that plaintiff was to be transferred
to Mule Creek or Corcoran.  (FAC at 4, ¶ 16).

4

1   enemy inmate was also on the prison bus, but sat in the general population section.

2   (FAC at 5, ¶ 19).  The enemy inmate told the other inmates on the bus that plaintiff

3   was a "rat." (FAC at 5, ¶ 19).  At the time plaintiff arrived at HDSP, the facility

4   was on lock-down due to a riot, and inmates were separated by race to prevent

5   race riots. (FAC at 5, ¶¶ 20, 21).  Plaintiff was placed in a holding tank with other

6   white inmates. (FAC at 5, ¶ 21).

7        On May 14, 2001, plaintiff was taken to Facility C.  (FAC at 5, ¶ 22).  On

8   numerous occasions thereafter, plaintiff asked to be placed in protective custody

9   because he had testified against a prison gang member and had been transferred to

10  HDSP with a known enemy, i.e., the enemy inmate. (FAC at 6, ¶ 28).  Facility C

11  was on lockdown, and plaintiff was in fear for his life for most of the time plaintiff

12  was housed there. (FAC at 6, ¶ 29).

13       On October 18, 2001, plaintiff was placed in administrative segregation at

14  HDSP because of the safety concerns he expressed in documents submitted to

15  authorities as part of his efforts to exhaust his administrative remedies. (FAC at 6,

16  ¶ 30).  From October 18, 2001 through July 26, 2002, plaintiff was in "extreme

17  solitary confinement," and was permitted to exercise outside every three to five

18  days in a dog type holding cage. (FAC at 7, ¶¶ 31, 32).

19       On July 26, 2002, plaintiff was granted Psychiatric Management Unit

20  ("PMU") status and a modified program which did not include vocational or other

21  programs that were offered to the general population. (FAC at 7, ¶ 33).  From

22  May 9, 2001 through June 11, 2003, plaintiff was denied any opportunity to meet

23  requirements for parole even though his minimum eligible parole date was 1996,

24  and he had served about twenty-one years in prison as of May 9, 2001. (FAC at 7,

25  ¶ 35).

26       On June 11, 2003, plaintiff was transferred out of HDSP. (FAC at 7, ¶ 34).

27  ///

28  ///

### III. DISCUSSION

#### A. Standards Governing Motions to Dismiss

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for failure to state a claim because: (1) the complaint lacks a cognizable legal theory; or (2) the complaint alleges insufficient facts under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988). A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. Simpson v. AOL Time Warner, Inc., 452 F.3d 1040, 1046 (9th Cir. 2006). Where the complaint discloses a fact that necessarily defeats a claim, the court may dismiss on that basis as well. Franklin v. Murphy, 745 F.2d 1221, 1228-29 (9th Cir. 1984).

In ruling on a motion to dismiss made pursuant to F.R.Civ.P. 12(b)(6), the court must take as true all factual allegations in a complaint, and must construe the complaint in the light most favorable to the plaintiff. See Yamaguchi v. United States Department of the Air Force, 109 F.3d 1475, 1481 (9th Cir. 1997). In the case of a pro se plaintiff, pleadings are liberally construed to afford him the benefit of any doubt. See Tyler v. Cisneros, 136 F.3d 603, 607 (9th Cir. 1998); Karim-Panahi v. Los Angeles Police Department, 839 F.2d 621, 623 (9th Cir. 1988). Conclusory allegations of law, however, are insufficient to defeat a motion to dismiss. Lee v. City of Los Angeles, 250 F.3d 668, 679 (9th Cir. 2001) (citation omitted). Moreover, even pro se pleadings "must meet some minimum threshold in providing a defendant with notice of what it is that it allegedly did wrong." Brazil v. United States Department of Navy, 66 F.3d 193, 199 (9th Cir. 1995).

In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss. See Schneider v. California Department of Corrections, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (emphasis in

1  original; citations omitted). The court may, however, consider documents
2  properly submitted as part of the complaint or upon which the complaint
3  necessarily relies, if the authenticity of such documents is not contested. Lee, 250
4  F.3d at 688 (citations omitted). A court may also consider judicially noticed
5  matters of public record. Id. at 689.

6       Motions to dismiss based on qualified immunity grounds present a special
7  difficulty. Hydrick v. Hunter, 466 F.3d 676, 686 (9th Cir. 2006). Such motions
8  put the court in the difficult position of deciding "far-reaching constitutional
9  questions on a nonexistent factual record." Id. (quoting Kwai Fun Wong v.
10  United States, 373 F.3d 952 (9th Cir. 2004)). A court should be cautious not to
11  eviscerate the notice pleading standard in suits where qualified immunity is at
12  issue. Id. at 687 (citing Galbraith v. County of Santa Clara, 307 F.3d 1119, 1125-
13  26 (9th Cir. 2002)).

14       If the court finds that a complaint has failed to state a claim, dismissal may
15  be with or without leave to amend. Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th
16  Cir. 2000) (en banc). A court may consider factual allegations outside of the
17  complaint in determining whether to grant leave to amend.[7] See Broam v. Bogan,
18  320 F.3d 1023, 1026 n.2 (9th Cir. 2003). Dismissal without leave to amend is
19  proper only in "extraordinary" circumstances. Id. at 1028 (9th Cir. 2003) (citation
20  and internal quotation omitted). A pro se complaint may not be dismissed without
21  leave to amend unless it is absolutely clear that the deficiencies of the complaint
22

23       [7]Defendants Yarborough and Downs have objected to the court's
24  consideration of the additional documents attached to the First Opposition. (First
25  Reply at 2-3). In light of the authorities discussed above, the court has considered
    only the factual allegations contained within the First Amended Complaint and the
26  documents referenced therein and attached thereto in deciding the propriety of a
27  dismissal. However, the court has considered the parties' additional factual
    assertions and submissions for the legally permissible and limited purpose of
28  determining whether to grant leave to amend.

7

1  could not be cured by amendment. Karim-Panahi, 839 F.2d at 623 (citations

2  omitted); see also Lopez, 203 F.3d at 1130 (court should not dismiss pro se

3  complaint without leave to amend "unless it determines that the pleading could not

4  possibly be cured by the allegation of other facts") (citation and internal

5  quotations omitted).  A court may dismiss a complaint without leave to amend

6  when amendment would be futile. McQuillion v. Schwarzenegger, 369 F.3d 1091,

7  1099 (9th Cir. 2004).

8  **B.    Plaintiff's Claims Against Defendants in Their Official Capacities**

9       The First Amended Complaint asserts claims for monetary damages against

10  defendants in both their official capacities and their individual capacities.

11  Defendants argue that plaintiff's claims against them in their official capacities

12  should be dismissed based on the Eleventh Amendment, and because such

13  defendants are not "persons" as contemplated by 42 U.S.C. § 1983.  As

14  defendants' arguments are largely well-taken, the First Amended Complaint's

15  claims for monetary relief as against defendants in their official capacities, should

16  be dismissed without leave to amend.[8]

17       In Will v. Michigan Department of State Police, 491 U.S. 58, 64-66, 71

18  (1989), the Supreme Court held that state officials sued in their official capacities

19  are not "persons" subject to civil rights suits under 42 U.S.C. § 1983.  The

20  Supreme Court reasoned that a suit against a state official in his or her official

21  capacity is no different from a suit against the State itself which would be barred

22

23  ─────────────────────

24       [8]Although the Eleventh Amendment bars suits for monetary relief against
   state officials in their official capacities, it does not bar suits for prospective
25  injunctive relief against state officials in their official capacities. See Hydrick,
   466 F.3d at 688 ("Defendants concede that suits for injunctive or declaratory relief
26  do not violate the Eleventh Amendment. . . .") (citing Ex Parte Young, 209 U.S.
27  123 (1908)).  Consequently, this court does not recommend dismissal of plaintiff's
   claims for injunctive relief against defendants in their official capacities based on
28  this ground.

1   by the Eleventh Amendment.⁹ ~~Id.; see also~~ ~~Bair v. Krug, 853 F.2d 672, 675 (9th~~

2   ~~Cir. 1988)~~ ("[T]he eleventh amendment bars actions against state officers sued in

3   their official capacities for past alleged misconduct involving a complainant's

4   federally protected rights, where the nature of the relief sought is retroactive, i.e.,

5   money damages, rather than prospective, e.g., an injunction."); Hydrick, 466 F.3d

6   at 688 (plaintiffs cannot seek monetary damages against state officials in their

7   official capacity) (citing Doe v. Lawrence Livermore National Laboratory, 131

8   F.3d 836, 839 (9th Cir. 1997).  The Eleventh Amendment, however, does not bar

9   suits seeking damages against state officials in their personal capacity.  Hydrick,

10  466 F.3d at 688; see also Hafer v. Melo, 502 U.S. 21, 30 (1991).

11      Accordingly, the Motions should be granted to the extent they seek

12  dismissal of the First Amended Complaint's monetary claims for relief against

13  defendants in their official capacities.

14  **C.   Plaintiff's Claims Against Defendants in Their Individual**

15       **Capacities**

16      To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that:

17  (1) a right secured by the Constitution or laws of the United States was violated,

18  and (2) the deprivation was committed by a person acting under color of state law.

19  See West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted).¹⁰  Section 1983 "'is

20

21
_____

22      ⁹Although a state can waive its Eleventh Amendment protection and allow a
    federal court to hear and decide a case commenced or presented to it, no such

23  waiver has occurred in this case. See Idaho v. Coeur d'Alene Tribe of Idaho, 521

24  U.S. 261, 267 (1997) (Eleventh Amendment "enacts a sovereign immunity from
    suit, rather than a nonwaivable limit of the Federal Judiciary's subject-matter

25  jurisdiction"); Riggle v. California, 577 F.2d 579, 585-86 (9th Cir. 1978)

26  (California has not waived Eleventh Amendment immunity to suits in federal

27  court).

28      ¹⁰Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a short
                                                              (continued...)

                                    9

1  not itself a source of substantive rights,' but merely provides 'a method for

2  vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S.

3  386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)).

4      A person deprives another of a constitutional right, within the meaning of

5  Section 1983, if he does an affirmative act, participates in another's affirmative

6  acts, or omits to perform an act which he is legally required to do that causes the

7  deprivation of which the plaintiff complains. Id. (citing Johnson v. Duffy, 588

8  F.2d 740, 743 (9th Cir. 1978)). The requisite causal connection can be established

9  not only by some kind of direct personal participation in the deprivation, but also

10 by setting in motion a series of acts by others which the actor knows or reasonably

11 should know would cause others to inflict the constitutional injury.[11] Id. (citing

12

13

14  [10](...continued)
    and plain statement of the claim showing that the pleader is entitled to relief.

15  Heightened pleading of an improper motive in constitutional tort cases is no

16  longer required. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002);

17  Galbraith v. County of Santa Clara, 307 F.3d 1119, 1126-27 (9th Cir. 2002).

18  [11]Defendants, citing Leer v. Murphy, 844 F.2d 628 (9th Cir. 1988),
    essentially argue that plaintiff's conclusory claims that these defendants caused

19  the alleged constitutional violations at HDSP should be rejected because

20  defendants did not work at, and had no control over the events at HDSP.

21  Although Leer affirmed the grant of summary judgment against a plaintiff who
    failed to allege facts which demonstrated that a particular prison official was the

22  actual and proximate cause of a constitutional violation, that case does not dictate

23  a similar result here for at least two reasons. First, Leer predates Swierkiewicz
    and Galbraith which establish that heightened pleading standards no longer apply

24  in constitutional tort cases. Second, Leer involved a motion for summary

25  judgment rather than a motion to dismiss to which different standards apply. That

26  is not to say, however, that a court may not dismiss a complaint at the pleading

27  stage based upon the absence of proximate causation. Where causation cannot
    reasonably be established under the facts alleged by a plaintiff because, for

28  example, the complaint alleges the existence of an intervening event, dismissal
                                                                    (continued...)

10

1  Johnson, 588 F.2d at 743-44).  In limited circumstances, a person can also be
2  subject to Section 1983 liability for the acts of others.  Id.  Although there is no
3  pure *respondeat superior* or agency liability under Section 1983, a supervisor is
4  liable for the constitutional violations of a subordinate "if the supervisor
5  participated in or directed the violations, or knew of the violations and failed to act
6  to prevent them."  Id. (quoting Taylor v. List, 880 F.2d 1040, 1045 (9th Cir.
7  1989)).

        **1.    Plaintiff's Eighth Amendment Failure to Protect Claim**

9       Plaintiff's first claim alleges that defendants knowingly, maliciously, and
10  with deliberate indifference to plaintiff's physical safety, deprived plaintiff of his
11  Eighth Amendment right not to be subjected to cruel and unusual punishment by
12  allowing plaintiff to be transferred to HDSP with a known enemy inmate.  (FAC
13  ¶¶ 37-43).

14       The Eighth Amendment requires prison officials to ensure the safety of
15  prisoners, including protecting prisoners from each other.  Farmer v. Brennan, 511
16  U.S. 825, 833 (1994); Hearns v. Terhune, 413 F.3d 1036, 1040-42 (9th Cir. 2005).
17  A prison official violates the Eighth Amendment when:  (1) an inmate is
18  incarcerated under conditions posing a substantial risk of serious harm; and (2) the
19  prison official deliberately disregards the risk by failing to take reasonable
20  measures to abate it.  Farmer, 511 U.S. at 847; Hearns, 413 F.3d at 1042-1043.
21  Under this standard, the prison official must not only "be aware of facts from
22  which the inference could be drawn that a substantial risk of serious harm exists,"
23  but that person "must also draw the inference."  Farmer, 511 U.S. at  837.  "If a
24  [prison official] should have been aware of the risk, but was not, then the [official]
25  has not violated the Eighth Amendment, no matter how severe the risk."  Gibson

26

27      [11](...continued)
28  predicated on the lack of proximate cause is appropriate.  Benefiel v. Exxon Corp.,
   959 F.2d 805, 808 (9th Cir. 1992).

          11

1  v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002) (citation

2  omitted).

3      This court concludes that plaintiff has alleged facts that, if accepted as true

4  and construed in the light most favorable to plaintiff, raise inferences that (a) a

5  substantial risk of serious harm to plaintiff existed, (b) defendants were aware of

6  such risk, and (c) defendants disregarded it by failing to take reasonable measures

7  to abate it.

8      Specifically, the First Amended Complaint and the attachments thereto

9  reflect the following:   Plaintiff was threatened by the enemy inmate and his

10 affiliates. (FAC at 4, ¶ 16; FAC Exs. 1, 3).  Plaintiff personally advised

11 defendants Yarborough and Downs that he was being threatened by the enemy

12 inmates' affiliates and requested that he be separated from the enemy inmate and

13 his affiliates and placed in protective custody. (FAC at 4, ¶¶ 13-14, 16; FAC

14 Ex. 1).  Plaintiff alerted defendant McGuinness to his safety concerns and the fact

15 that he had just provided details regarding his concerns to co-defendant

16 Yarborough. (FAC at 4, ¶ 15; FAC Ex. 3).  Defendants transferred plaintiff out of

17 their facility and were "well aware of the threat to safety it posed to transfer

18 plaintiff to HDSP and with a known enemy."[12]  (FAC at 9, ¶¶ 41, 43).  Despite the

19 concerns plaintiff expressed to defendants in late April/early May 2001,

20

---

21     [12]Defendants argue that, contrary to plaintiff's allegations, they did not
   transfer plaintiff to HDSP, and that the documents attached to the First Amended
22 Complaint reflect that the transfer was the result of classification staff
   representative action.  At the pleading stage, and for purposes of a motion to
23 dismiss, the court must accept plaintiff's allegation that defendants transferred him
24 as true.  The court notes that the fact that a classification staff representative may
   have made the final transfer decision, does not exclude the possibility that
25 defendants were involved in the decisionmaking process.  Indeed, defendants'
26 argument that plaintiff's separation from the enemy inmate on the bus destined for
27 HDSP reflects that plaintiff cannot show that defendants were "deliberately
   indifferent" to his safety concerns can be read as an acknowledgement that they
28 were aware that the two individuals were being transferred to the same facility and
   that defendants were involved in the transfer.

1  plaintiff's central file contained no documentation that plaintiff considered the

2  enemy inmate to be an enemy at least as of October 2001. (FAC Exs. 5, 6).

3  Plaintiff suffered physical injury as a result of defendants' actions. (FAC at 9,

4  ¶ 43).

5        While plaintiff may or may not ultimately be able to prove that defendants

6  (i) actually transferred or caused plaintiff to be transferred to HDSP;

7  (ii) affirmatively knew that he was being transferred with a known enemy;

8  (iii) failed to document plaintiff's expressed safety concerns regarding the enemy

9  inmate in his central file; (iv) set in motion a series of acts which they knew or

10 should have known would cause others to inflict a constitutional injury; or

11 (v) suffered physical injury, the allegations of plaintiff's first claim are sufficient

12 to withstand a motion to dismiss under the notice pleading requirements.[13]  Thus,

13 the Motions should be denied to the extent they are based on plaintiff's failure to

14 state a claim against defendants for failure to protect plaintiff in violation of the

15 Eighth Amendment.

16    **2.    Plaintiff's Eighth Amendment Conditions of Confinement**

17         **Claim**

18        Plaintiff next claims that defendants deprived plaintiff of his Eighth

19 Amendment right not to be subjected to cruel and unusual punishment by forcing

20 plaintiff to seek confinement in administrative segregation at HDSP for his

21 protection. (FAC ¶ 48). He alleges that from October 18, 2001 until July 26, 2001

22 [sic], he was in extreme solitary confinement for 308 days[14] and permitted to

23

24    [13]The issue is not whether a plaintiff will ultimately prevail but whether the

25 claimant is entitled to offer evidence to support the claims. Hearns, 413 F.3d at

26 1043. Indeed, it may appear on the face of the pleadings that a recovery is very

27 remote and unlikely, but that is not the test. Id.

28    [14]Although plaintiff alleges that he was in solitary confinement until July 26,

2001, rather than 2002 this appears to be an error.  Similarly, plaintiff appears to
                                                              (continued...)

13

exercise outside every three to five days in a dog type holding cage.[15] (FAC ¶ 32).
He also alleges that he was not provided with vocational or other programs.[16]
(FAC ¶¶ 33, 62).

Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). The Eighth Amendment requires, however, that prison officials ensure that inmates receive adequate food, clothing, shelter, medical care, and outside exercise. Hearns, 413 F.3d at 1042. (citations omitted).

A plaintiff who challenges the conditions of confinement must make two showings to demonstrate a violation of the Eighth Amendment. Hearns, 413 F.3d at 1042. First, he must make an objective showing that the deprivation was "sufficiently serious" to form the basis for an Eighth Amendment violation. Id. (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The circumstances, nature, and duration of a deprivation of the basic human necessities must be considered in determining whether a constitutional violation has occurred. Johnson v. Lewis,

---

[14](...continued)
have made a mathematical error in calculating the number of days in which he was in solitary confinement. Although he alleges that he was in solitary confinement for a 308-day period, the number of days between October 18, 2001 and July 26, 2002 is a period slightly exceeding 280 days, i.e., over nine, but less than ten months.

[15]Plaintiff does not specifically argue that the lack of more frequent outdoor exercise constituted an Eighth Amendment violation. However, in light of the liberal construction attendant to pro se pleadings, this court nonetheless analyzes plaintiff's assertion that he was provided with outside exercise every three to five days under the rubric of the Eighth Amendment.

[16]Plaintiff again does not specifically argue that the lack of vocational or other programs constitutes an Eighth Amendment violation. The court nonetheless analyzes plaintiff's assertion regarding the lack of such programs under the rubric of the Eighth Amendment.

14

1   217 F.3d 726, 731 (9th Cir. 2000). The more basic the need, the shorter the time it

2   can be withheld. Id. (citing Hoptowit v. Ray, 682 F.2d 1237, 1259 (9th Cir.

3   1982)).

4        Second, he must make a subjective showing that the prison official acted

5   "with a sufficiently culpable state of mind." Hearns, 413 F.3d at 1042 (quoting

6   Wilson, 501 U.S. 294). A plaintiff must show that prison officials had actual

7   knowledge of plaintiff's basic human needs and deliberately refused to meet those

8   needs. Id.

9        As courts are required to analyze each condition complained of separately to

10  determine whether a violation of the Eighth Amendment arises, this court first

11  considers whether plaintiff's confinement in administrative segregation for over

12  nine months states a claim for violation of the Eighth Amendment. Hoptowit, 682

13  F.2d at 1246 (court must separately analyze each condition in issue in Eighth

14  Amendment claim and may not find Eighth Amendment violations based on

15  totality of conditions at prison). Applying the objective standard, this court

16  concludes that plaintiff's claim regarding his confinement in administrative

17  segregation is not sufficiently serious to form the basis for an Eighth Amendment

18  violation. The placement of an inmate in administrative segregation does not

19  constitute cruel and unusual punishment unless the conditions of confinement

20  otherwise violate the Eighth Amendment. See Hewitt v. Helms, 459 U.S. 460, 468

21  (1983) ("the transfer of an inmate to less amenable and more restrictive quarters

22  for nonpunitive reasons is well within the terms of confinement ordinarily

23  contemplated by a prison sentence"). Moreover, in this case, plaintiff

24  affirmatively sought to be placed in protective custody.

25       Next, the court considers whether plaintiff's alleged lack of adequate

26  outdoor exercise states a claim that defendants violated the Eighth Amendment.

27  Although such claim may well be sufficiently serious to form the basis for an

28  ///

15

1  Eighth Amendment violation,[17] the court concludes that it does not state a claim

2  because plaintiff does not allege, as a subjective matter, that defendants actually

3  knew plaintiff was not permitted to exercise outdoors more than every three to five

4  days or that defendants deliberately refused to meet plaintiff's need for adequate

5  outdoor exercise.

6       Finally, to the extent plaintiff alleges that he has been deprived of

7  vocational and rehabilitation programs by virtue of his confinement in

8  administrative segregation, he does not state an Eighth Amendment claim.  The

9  lack of such programs does not violate the Eighth Amendment.  See Hoptowit, 682

10  F.2d at 1254-55; Toussaint v. McCarthy, 801 F.2d 1080, 1106-08 (9th Cir.

11  1986).[18]

12       Accordingly, plaintiff fails to state an Eighth Amendment claim regarding

13  the conditions of confinement at HDSP upon which relief may be granted against

14  defendants in their individual capacities.  However, as it is not "absolutely clear"

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22

23       [17]See e.g., Allen v. Sakai, 48 F.3d 1082, 1087-88 (9th Cir. 1994) (inmate's

24  claim that he was permitted to exercise outside only 45 minutes per week for

25  period of six weeks and potentially indefinite period, sufficiently serious to allege

    an Eighth Amendment violation; prison did not meet stated goal of providing five

26  hours of exercise per week).

27       [18]To the extent plaintiff may also suggest that the alleged deprivation of a

28  liberty interest in parole/consideration for parole constitutes a violation of the

    Eighth Amendment, he also fails to state a claim.

to the court that the deficiencies in this claim could not be cured by amendment, dismissal of this claim should be with leave to amend.[19]

---

[19]Plaintiff, among other things, seeks the following remedies based on his Eighth Amendment claims: (i) damages based in part upon the emotional and psychological distress he allegedly suffered; and (ii) an injunction ordering his "transfer" from the CDC. (FAC at 9, ¶¶ 44-46).

First, to the extent plaintiff seeks compensatory damages predicated on alleged emotional/psychological distress suffered as a result of constitutional violations, such damages are not available without a prior showing of more than a de minimis physical injury. 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in jail, prison or any other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury."); Oliver v. Keller, 289 F.3d 623, 627, 629 (9th Cir. 2002) (prisoner cannot recover compensatory damages for claimed mental or emotional injury absent showing of physical injury which need not be significant but must be more than de minimis). Although plaintiff generally alleges that defendants' actions caused him to suffer physical injury, he does not allege that the enemy inmate or any other inmate attacked or physically harmed him. (FAC at 9, ¶ 43). Nor does plaintiff provide any specifics regarding the degree of physical injury he allegedly suffered. If plaintiff's physical injury is indeed de minimis, he would not be entitled to damages based upon his alleged emotional/psychological distress. In light of this fact, plaintiff may wish to reconsider proceeding with his claim for relief based upon emotional/psychological distress in the event he elects to file a second amended complaint.

Second, to the extent plaintiff's request for injunctive relief in the form of a "transfer" from CDC custody is intended as a request for release from custody, such a claim is not cognizable in this action. "[A] prisoner in state custody cannot use a § 1983 action to challenge 'the fact or duration of his confinement,'" but rather must seek habeas corpus relief. Wilkinson v. Dotson, 544 U.S. 74, 74 (2005) (quoting Preiser v. Rodriguez, 411 U.S. 475, 489, (1973)). Moreover, when an inmate is released from prison or, as in this case, transferred to another prison, and there is no reasonable expectation nor demonstrated probability that he will again be subjected to the prison conditions from which he seeks injunctive relief, such claim is subject to being dismissed as moot. See Dilley v. Gunn, 64

(continued...)

### 3.    Plaintiff's Due Process Claims

The First Amended Complaint alleges that defendants subjected plaintiff to an atypical and significant hardship and violated his right to due process by depriving him of a protected liberty interest to be free from administrative segregation. (FAC ¶¶ 50-52, 57). Plaintiff further alleges that, by virtue of his more than nine-month confinement in administrative segregation and nearly two-years in PMU status, and the attendant inability to participate in vocational, educational or other programs, he was deprived of his liberty interest in being released/considered for release on parole.[20] (FAC ¶¶ 58, 59, 62).

---

[19](...continued)
F.3d 1365, 1368-69 (9th Cir. 1995); Darring v. Kincheloe, 783 F.2d 874, 876-77 (9th Cir. 1986). A claim that the inmate might be re-transferred to the prison where the injury occurred is too speculative to prevent mootness. See Dilley, 64 F.3d at 1369; Wiggins v. Rushen, 760 F.2d 1009, 1010-11 (9th Cir. 1985). In light of the foregoing, plaintiff may wish to reconsider proceeding with his claim for injunctive relief in the event he elects to file a second amended complaint.

[20]Defendants argue that dismissal of plaintiff's due process claim relating to the alleged parole deprivation is appropriate because it challenges the duration of his confinement, and thus raises a claim that can only be considered through habeas corpus proceedings. To the extent the First Amended Complaint is read to allege that plaintiff was deprived of his substantive right to parole, without procedural due process, and that he is therefore entitled to be released on parole, defendants' claim is well taken and such claim should be dismissed. See supra note 19. However, the First Amended Complaint can also, or alternatively, be read to allege that plaintiff (i) had a substantive due process right to avoid administrative segregation/PMU status based in part on the alleged fact that such segregation/status resulted in his inability to obtain parole and thereby affected the length of his sentence; and (ii) he was required to endure such segregation/status without procedural due process. To the extent the First Amended Complaint is read to allege such a claim, it is properly the subject of a Section 1983 action, rather than a habeas action, because any favorable judgment that might result from plaintiff's challenge to the denial of prison programs would in no way guarantee

(continued...)

18

1   "[T]he Constitution itself does not give rise to a liberty interest in avoiding

2   transfer to more adverse conditions of confinement." <u>Wilkinson v. Austin</u>, 545

3   U.S. 209, 221 (2005) (citation omitted).  Nor does the Constitution itself entitle an

4   inmate to participate in rehabilitation programs, to remain in the general

5   population where such programs may be available, or to be released on parole.

6   <u>Greenholtz v. Nebraska Penal Inmates</u>, 442 U.S. 1, 7 (1979) (no constitutional

7   right of convicted person to be conditionally released before expiration of valid

8   sentence); <u>Anderson v. County of Kern</u>, 45 F.3d 1310, 1316 (9th Cir.), <u>as</u>

9   <u>amended</u>, 75 F.3d 448 (1995) (hardship associated with administrative

10  segregation, such as loss of recreational and rehabilitative programs or

11  confinement to one's cell for a lengthy period of time does not violate Due Process

12  Clause because no liberty interest in remaining in general population); <u>Hernandez</u>

13  <u>v. Johnson</u>, 833 F.2d 1316, 1319 (9th Cir. 1987) (Due Process Clause does not

14  create liberty interest in prison education or rehabilitation classes); <u>Rizzo v.</u>

15  <u>Dawson</u>, 778 F.2d 527, 530 (9th Cir. 1985) (Due Process clause does not create

16

17

18

19  [20](...continued)
    parole or necessarily shorten [his] prison sentence by a single day.  <u>See</u> <u>Ramirez v.</u>

20  <u>Galaza</u>, 334 F.3d 850, 858-59 (9th Cir. 2003), <u>cert.</u> denied, 541 U.S. 1063 (2004)
    (citing <u>Neal v. Shimoda</u>, 131 F.3d 818, 824 (9th Cir. 1997) (emphasis in original)).

21  "[H]abeas jurisdiction is absent, and a § 1983 action proper, where a successful

22  challenge to a prison condition will not necessarily shorten the prisoner's

23  sentence" or overturn his conviction.  <u>Id.</u> at 859.  Instead success in such an action
    would provide only "a ticket to get in the door of the parole board" because the

24  parole board would have the authority to deny plaintiff's request for parole on the

25  basis of any of the grounds available to it at the time it evaluates the request.  <u>Id.</u>;

26  <u>Neal</u>, 131 F.3d at 824.  In that circumstance a favorable judgment here would not
    "undermine the validity of [his] conviction," or necessarily alter the calculus for

27  his possible parole.  <u>Id.</u>  In light of the foregoing, plaintiff should, at a minimum,

28  clarify the theory under which he is proceeding in any second amended complaint
    he may elect to file.

1  property interest in vocational instruction courses); Hoptowit, 682 F.2d at 1255

2  (no constitutional right to rehabilitation).

3      A liberty interest in avoiding particular conditions of confinement may,

4  however, arise from state policies or regulations. Wilkinson, 545 U.S. at 222.

5  Similarly, a liberty interest in parole may arise from state statutes. Board of

6  Pardons v. Allen, 482 U.S. 369, 377-78 (1987).

7      In Sandin v. Connor, 515 U.S. 472, 485-86 (1995), the Supreme Court held

8  that state law creates a liberty interest deserving of protection under the Due

9  Process Clause when the deprivation in question: (1) restrains the inmate's

10  freedom in a manner not expected from their sentence; and (2) imposes atypical

11  and significant hardship on the inmate in relation to the ordinary incidents of

12  prison life. Id. at 483-84. In Sandin, the Court found no liberty interest protecting

13  against a 30-day assignment to segregated confinement because it did not "present

14  a dramatic departure from the basic conditions of [the inmate's] sentence." Id. at

15  485. Nor did the Court find that the short duration of the segregation worked a

16  major disruption in the inmate's environment. Id.

17      (a)    Administrative Segregation/Conditions of Confinement

18      Plaintiff alleges that the Ninth Circuit has recognized a liberty interest in

19  avoiding administrative segregation, and that defendants have deprived him of this

20  right without Due Process. Plaintiff is correct that prior to Sandin, the Ninth

21  Circuit had held that California prison regulations created a liberty interest in

22  freedom from administrative segregation that was cognizable under the Due

23  Process Clause. Toussaint v. McCarthy, 801 F.2d 1080, 1097-98 (9th Cir. 1986);

24  see also Madrid v. Gomez, 889 F. Supp. 1146 (N.D. Cal. 1995) (same).  The

25  Toussaint and Madrid courts did not, however, examine whether administrative

26  segregation placed an atypical and significant hardship on inmates in relation to

27  the ordinary incidents of prison life. Since Sandin, the Ninth Circuit has

28  recognized that typically, administrative segregation in and of itself does not

20

1   implicate a protected liberty interest. <u>Serrano v. Francis</u>, 345 F.3d 1071, 1078 (9th
2   Cir. 2003). Instead, it is a case by case, fact by fact determination. <u>Keenan v.</u>
3   <u>Hall</u>, 83 F.3d 1083, 1089 (9th Cir. 1996) <u>amended by</u> 135 F.3d 1318 (9th Cir.
4   1998).

5       When conducting the <u>Sandin</u> inquiry, courts should consider the Eighth
6   Amendment standards as well as the prisoners' conditions of confinement, the
7   degree of difference between the conditions for the general prison population and
8   the segregated population, the duration of the segregated confinement, and
9   whether the sanction will affect the length of the prisoners' sentence. <u>Keenan</u>, 83
10  F.3d at 1089. The "atypicality" prong of the analysis requires not merely an
11  empirical comparison, but turns on the importance of the right taken away from
12  the prisoner. <u>See</u> <u>Carlo v. City of Chino</u>, 105 F.3d 493, 399 (9th Cir. 1997).

13      In <u>Wilkinson</u>, a case involving an inmate indefinitely confined to Ohio
14  State's only "supermax" prison, the Supreme Court recognized the difficulty of
15  locating the appropriate baseline from which to measure what is atypical and
16  significant in any particular prison system. 545 U.S. at 223. Although the Court
17  did not resolve that issue, it found that a liberty interest existed in avoiding
18  assignment to the supermax prison based on a combination of factors. <u>Id.</u> at 223-
19  24. Specifically, the Court determined that atypical and significant hardship arose
20  from the following conditions, taken together: (i) almost all human contact,
21  including conversation cell-to-cell, was prohibited; (ii) lights, though maybe
22  dimmed, were on for 24 hours a day; (iii) exercise was permitted for one hour per
23  day in a small indoor room; (iv) the duration of the confinement was indefinite;
24  and (v) placement at the facility disqualified an otherwise eligible inmate from
25  parole consideration. <u>Id.</u> The Court noted that any of the factors considered
26  standing alone, might not be sufficient to create a liberty interest. <u>Id.</u>
27  Although the Court recognized a liberty interest in avoiding confinement at the
28  supermax facility, it ultimately concluded that the current policy in place was

21

adequate to safeguard an inmate's liberty interest in not being assigned to such facility. Id. at 228.

Here, the court need not resolve whether the conditions of plaintiff's segregated confinement/PMU status at HDSP give rise to a liberty interest cognizable under the Due Process Clause because the court finds, as a matter of law, that defendants, all of whom worked at a facility other than HDSP, did not proximately cause plaintiff's conditions of confinement at HDSP. As noted above, under Section 1983 the requisite causal connection can be established if defendants set in motion a series of acts by others which they know or reasonably should know would cause others to inflict a constitutional injury. However, the causation requirement of Section 1983 is not satisfied by a showing of mere causation in fact – a plaintiff must also establish proximate or legal causation. Arnold v. International Business Machines, Corp., 637 F.2d 1350, 1355 (9th Cir. 1981). Where proximate causation cannot reasonably be established under the facts alleged by a plaintiff because the complaint alleges the existence of an intervening event, a dismissal predicated on the lack of proximate cause is appropriate. Benefiel v. Exxon Corp., 959 F.2d 805, 808 (9th Cir. 1992). The First Amended Complaint reflects that plaintiff affirmatively sought to removed from general population and placed in protective custody, and that as a result of such requests, he was placed in administrative segregation. (FAC at 6, ¶ 28; FAC at 7, ¶ 31). This, by itself, is an intervening event which leads the court to conclude that plaintiff cannot reasonably establish that defendants proximately caused his administrative segregation/subsequent PMU status at HDSP.[21]

---

[21]The fact that the First Amended Complaint reflects that HDSP staff, as opposed to defendants, were controlling the conditions of plaintiff's confinement at HDSP, is a further intervening event which reflects that plaintiff cannot reasonably establish that defendants proximately caused the conditions of his confinement at HDSP. (FAC at 6, ¶ 28; FAC Ex. 5). Plaintiff filed a separate
(continued...)

### (b)   Parole

Plaintiff also alleges that defendants' conduct deprived him of his liberty interest in receiving parole in violation of the Due Process Clause. The Ninth Circuit has held that California inmates, by virtue of California's parole statute, have a liberty interest in release on parole that is protected by the procedural safeguards of the Due Process Clause. Irons v. Carey, 2007 WL 656345 *3 (9th Cir. 2007); Sass v. Board of Prison Terms, 461 F.3d 1123, 1127-28 (9th Cir. 2006). However, as with plaintiff's Due Process claim regarding his conditions of confinement, the court finds that plaintiff fails to state a claim that defendants deprived him of his liberty interest in parole. This claim is predicated on the lack of vocational/educational programs available to plaintiff at HDSP by virtue of his confinement in administrative segregation/PMU status. As noted above, plaintiff cannot reasonably establish that defendants proximately caused such deprivation in light of intervening events at HDSP.

Accordingly, plaintiff fails to state Due Process claims against defendants in their individual capacities. Although this court is extremely dubious about whether the deficiencies in the Due Process claims contained within the First Amended Complaint can be cured, the court recommends that dismissal of such claims be with leave to amend to afford plaintiff an opportunity to cure such deficiencies if he is able to do so.[22]

----

[21](...continued)
lawsuit against HDSP prison officials. See Crane v. Runnels, 2006 WL 462500 (E.D. Cal.).

[22]To the extent plaintiff alleges that defendants violated his rights under the Equal Protection Clause by depriving him of an opportunity to participate in prison programs at HDSP that were offered to the general population, such claim fails. First, as with plaintiff's Due Process claims, plaintiff cannot reasonably establish that defendants proximately caused such alleged deprivation in light of intervening events at HDSP. Second, to the extent plaintiff intends to allege a

(continued...)

23

### D.     Qualified Immunity

Defendants argue that the First Amended Complaint should be dismissed against them in their individual capacities based on qualified immunity. Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[23] Brittain v. Hansen, 451 F.3d 982, 987 (9th Cir. 2006) (quoting Harlow v. Fitzgerald, 457 U.S. 800 (1982)); see also Malley v. Briggs, 475 U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"). It is "an entitlement not to stand trial or face the other burdens of litigation." Saucier v. Katz, 533 U.S. 194, 200 (2001) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). The privilege is "an *immunity from suit* rather than a mere defense to liability[.]" Id. at 200 (quoting Mitchell, 472 U.S. at 526) (emphasis in original). Where defendants seek qualified immunity, a ruling on the issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. Id. at 200-01 (citation omitted).

In a suit against an officer for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in the proper

---

[22](...continued) claim for discrimination under the Equal Protection Clause, he fails to allege that he is a member of a protected class, let alone that defendants acted with the intent or purpose to discriminate against him based upon his membership in such protected class. See Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001). Third, to the extent plaintiff intends to allege an Equal Protection claim by virtue of being a "class of one," he does not allege that he has been intentionally treated differently from others similarly situated, and that there is no rational basis or compelling need for the difference in treatment. SeaRiver Maritime Financial Holdings, Inc. v. Mineta, 309 F.3d 662, 679 (9th Cir. 1996).

[23]Qualified immunity does not apply to suits for declaratory or injunctive relief. Frederick v. Morse, 439 F.3d 1114, 1123 n.46 (9th Cir.), cert. granted, 127 S. Ct. 722 (2006).

1  sequence. Saucier, 533 U.S. at 200. A court required to rule upon a qualified
2  immunity issue must first consider this threshold question: Taken in the light most
3  favorable to the party asserting the injury, do the facts alleged show the officer's
4  conduct violated a constitutional right? Saucier, 533 U.S. at 201 (citing Siegert v.
5  Gilley, 500 U.S. 226, 232 (1991)). If no constitutional right would have been
6  violated were the allegations established, there is no necessity for further inquiries
7  concerning qualified immunity. Saucier, 533 U.S. at 201.

8      On the other hand, if a violation could be made out on a favorable view of
9  the parties' submissions, the next, sequential step is to ask whether the right was
10 clearly established. Id. at 201. This inquiry must be undertaken in light of the
11 specific context of the case, not as a broad general proposition. Id. at 201. The
12 right the official is alleged to have violated must have been "clearly established"
13 in a particularized and relevant sense. Id. at 202 (citing Anderson v. Creighton,
14 483 U.S. 635, 640 (1987)). The right must be defined at the appropriate level of
15 specificity before a court can determine if it was clearly established. Wilson v.
16 Layne, 526 U.S. 603, 615 (1999); Hydrick, 449 F.3d at 992. "The contours of the
17 right must be sufficiently clear that a reasonable official would understand that
18 what he is doing violates that right." Id. at 202 (quoting Anderson, 483 U.S. at
19 640). The relevant, dispositive inquiry in determining whether a right is clearly
20 established is whether it would be clear to a reasonable officer that his conduct
21 was unlawful in the situation he confronted. Id.; see also Hope v. Pelzer, 536 U.S.
22 730, 739-40 (2002) (officers sued in civil action for damages under 42 U.S.C.
23 § 1983 have right to "fair notice" that conduct violated unconstitutional).

24      As discussed above, with the exception of plaintiff's Eighth Amendment
25 failure to protect claim, plaintiff here has failed to state a claim that defendants
26 have violated a constitutional right, even taking his allegations as true. Plaintiff's
27 failure to allege a constitutional violation obviates the need for the court to
28 proceed to the second step of the qualified immunity inquiry with respect to such

claims. Consequently, the Motions should be granted with respect to such claims on this ground as well.

With respect to plaintiff's Eighth Amendment failure to protect claim, the court must reach the second step of the qualified immunity inquiry. In light of clearly established Supreme Court and Ninth Circuit law, discussed above, that prison officials have an obligation under the Eighth Amendment to take reasonable steps to protect inmates from physical abuse, and given the existence of Title 15, Section 3378(b)(1) of the California Administrative Code, which requires prison officials to update a prisoner's file as any information critical to prisoner safety becomes known, and which represents an acknowledgement that the contemporaneous recording of such information is an integral part of complying with such duty to protect, this court finds that plaintiff's Eighth Amendment failure to protect claim alleges a violation of a clearly established constitutional right. Consequently, to the extent the Motions argue that defendants have qualified immunity with respect to such claim, they should be denied.

## IV.    CONCLUSION

Based on the foregoing, this court concludes:

1.    The Motions should be granted without leave to amend to the extent they seek dismissal of all claims for monetary relief against defendants in their official capacities.

2.    The Motions should be denied to the extent they seek dismissal of plaintiff's Eighth Amendment failure to protect claim.

3.    The Motions should be granted with leave to amend to the extent they seek dismissal of plaintiff's Eighth Amendment conditions of confinement, Due Process, and Equal Protection claims against defendants in their individual capacities.

4.    Plaintiff should be ordered to file a second amended complaint curing the deficiencies identified in this Report and Recommendation within thirty

1   (30) days of the District Court's approval of this Report and Recommendation, if
2   he desires to pursue this action.[24]

3   **V.    RECOMMENDATION**

4       **IT THEREFORE IS RECOMMENDED** that the District Court issue an
5   Order: (1) approving and adopting this Report and Recommendation; (2) granting
6   in part, and denying in part the Motions to Dismiss, as detailed in the Report and
7   Recommendation; (3) ordering plaintiff to file any second amended complaint
8   within thirty (30) days, if he still desires to pursue this action; and (4) advising
9   plaintiff that the failure timely to file a second amended complaint will subject this
10  action to dismissal based upon plaintiff's failure to prosecute.

11
12  Dated:  _3/26/07_
13
14
15                                  Honorable Jacqueline Chooljian
16                                  UNITED STATES MAGISTRATE JUDGE
17
18
19
20
21
22
23
24
25
26
27      [24]Any second amended complaint should:  (1) be complete in and of itself
28  and should not refer in any manner to the original or the First Amended
    Complaint; and (2) contain a "short and plain" statement of the claim or claims for
    relief . See Fed. R. Civ. P. 8.

PROPOSED

LODGED
CLERK. U.S. DISTRICT COURT

MAR 2 6 2007

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

RICHARD JOSEPH CRANE,

               Plaintiff,

       v.

M. YARBOROUGH, et al.,

               Defendants.

)
)
)
)
)
)
)
)
)
)

Case No. CV 05-8534 JSL(JC)

ORDER ADOPTING FINDINGS,
CONCLUSIONS, AND
RECOMMENDATIONS OF
UNITED STATES MAGISTRATE
JUDGE

Pursuant to 28 U.S.C. § 636, the Court has reviewed the First Amended Complaint, the Motions to Dismiss the Complaint ("Motions to Dismiss") filed by defendants M. Yarborough, D.K. Downs, and J. McGuinness (collectively "Defendants"), Plaintiff's Oppositions to the Motions to Dismiss, Defendants' Replies, all of the records herein, and the attached Report and Recommendation of United States Magistrate Judge.

IT IS HEREBY ORDERED that: (1) the Motions to Dismiss are granted in part and denied in part, as detailed in the Report and Recommendation; (2) the First Amended Complaint is dismissed – in part with leave to amend, in part without leave to amend, as detailed in the Report and Recommendation;

1

1   (3) Plaintiff shall file any Second Amended Complaint within thirty (30) days, if

2   he still desires to pursue this action; and (4) Plaintiff's failure timely to file a

3   Second Amended Complaint will subject this action to dismissal based on

4   Plaintiff's failure to prosecute.

5        IT IS FURTHER ORDERED that the Clerk serve copies of this Order and

6   the United States Magistrate Judge's Report and Recommendation by United

7   States mail on Plaintiff and on Defendants' counsel.

8        IT IS SO ORDERED.

9

10   DATED: _____, 2007

11

12        _____

13        HONORABLE J. SPENCER LETTS
14        UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

# EXHIBIT I

1  Richard J. Crane, #C-44519,
   Salinas Valley State Prison,
2  P.O. Box 1050,
   Fac. 'A' Bldg.#3, #230,
3  Soledad, CA 93960



4

5

6

7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10

11

12  RICHARD JOSEPH CRANE,        )  No.Cv.05-8534 JSL (JC)
                                 )
13       Plaintiff,              )     AFFIDAVIT OF
                                 )     PATRICK SHEGAS
14                               )
                                 )
15  M. YARBOROUGH, et al.,       )
                                 )
16       Defendants.             )
                                 )
17  _____

18        Patrick Shegas, being duly sworn, deposes and says

19  under the penalty of perjury as follows:

20        1.  I am an inmate in the California Department of

21  Corrections, CDC No.D-11404, and am presently confined at the

22  Salinas Valley State Prison, facility 'A' Sensitive Needs Yard.

23        2.  In 1994 I was housed at Tehachapi State Prison (CCI)

24  with Richard Joseph Crane, CDC No. C-44519, as a protective

25  custody status inmate.

26        3.  The reasons for my protective custody is due to the

27  fact that, I committed murder on orders of the Aryan Brotherhood

28  in 1986-1987, and debriefed these facts to prison investigators.

4.  When I met Richard Crane in 1994 I had prior knowledge of the fact that it was alleged that, he had testified in court against William Shively (A.K.A. Casper), and that he was in the protective custody for this reason.

5.  The fact that Richard Crane would be the victim of an attack or murder in the general population is apparent from the fact that he testified against Wm. Shively (Casper), as this is a reason for White Supremacist gangs in general population and the Aryan Brotherhood to attempt a murder of Richard Crane.

6.  The situation Richard Crane is in is similar to my own protective custody needs situation, therefore, I have direct knowledge of the serious nature of the threat to his life it would pose in general population mainline.

7.  The fact that I was housed in protective custody with Richard Crane in Tehachapi State Prison (CCI) is a recognized fact, and I am willing to testify to this fact from my own personal knowledge.

8.  I am willing to testify to the nature of the threat a mainline placement of Richard Crane would pose, since I have a unique knowledge of the violent nature of prison gangs to an inmate who has testified in court against a gang member.

9.  I have attached copies of my prison homicide cases to further support my affidavit concerning my personal knowledge of the violent enforcement of prison gangs retribution.

I, Patrick Shegas, affirm under the penalty of perjury that the foregoing is true and correct.

Dated: May   31,   2006.

*Patrick Shegas*

Patrick Shegas, CDC No. D-11404

ULES VIOLATION REPORT

| NUMBER | NAME | RELEASE/BOARD DATE | INST. | HOUSING NO. | LOG NO. |
|---|---|---|---|---|---|
| 104 | SHEGAS | N/A | FOL | 2A-3-18 | 2BC-12-W1 |

| CD.C. NO.(S) | SPECIFIC ACTS | | LOCATION | DATE | TIME |
|---|---|---|---|---|---|
| 3000(a), 3005(b) | State Law, Force & Violence | | #2 Rotunda | 12-12-86 | 6:15 p.m. |

On December 12, 1986, at approximately 6:15 p.m. BLACK (D-33428) was assaulted and fatally stabbed in the Unit #2 Rotunda. Information from a confidential source has identified SHEGAS (D-11404) as the assailant in the attack. The informant provided specific details of the incident, in which SHEGAS was standing directly behind BLACK in the stairwell, before entering the dining room. SHEGAS stabbed BLACK once in the back, leaving the knife in BLACK's back. BLACK immediately ran down the stairs for assistance. SHEGAS followed, and went directly into the dining room and sat down at a table. Because of specific details provided, the informant is considered reliable. His identity will not be revealed because of the imminent threat on his life.

R. E. HANNAFORD, SERGEANT

| | ASSIGNMENT | MOD. | DAY |
|---|---|---|---|
| | S&I SERGEANT | S/S | |

CLASSIFICATION ☐ ADMINISTRATIVE ☒ SERIOUS    HEARING REFERRED TO:    SEGREGATED PENDING HEARING

DIVISION (CIRCLE ONE) (A) B C D E F    ☐ HO ☐ SHO ☐ IC ☒ FC    LOC. _____    DATE _____

FIA _____    SUPPLEMENTS: _____    5-7-87

COPY OF CDC 115 BEFORE HEARING _____ 12-22-86    STAFF MEMBER SIGNATURE    DATE

STAFF MEMBER SIGNATURE    DATE    INCIDENT REPORT: _____    STAFF MEMBER SIGNATURE    DATE

COPY OF CDC 115 AFTER HEARING _____    STAFF MEMBER SIGNATURE    DATE

FINDINGS: ☒ GUILTY ☐ NOT GUILTY [EVIDENCE TO SUPPORT CONCLUSIONS AND ANY FACTORS IN AGGRAVATION]

PLEA: ☐ GUILTY ☒ NOT GUILTY

committee noted that the Director's Rule violation charge of 3005b was inappropriate and d__ __d to change the charge to 3005c - Force and Violence. Subject was informed of the change and the fact that he had 24 hours in which to review the charge prior to a hearing. Subject stated he wanted to waive the 24 hours and have the hearing conducted now. Subject was served a copy of Confidential Disclosure Statement informing him that the confidential information would be utilized in this hearing and that he had 24 hours to review same prior to a hearing. Subject stated he waives his 24 hour notice and wanted the hearing conducted now. Subject appeared to be in good health and was read his Miranded Rights and stated he understood; stated he wanted to talk and was ready to continue with the hearing. Subject was told that the District Attorney declined to prosecute on April 10, 1987 and that all time constraints had been met. An Investigative Employee was conducted and the hearing was ready to proceed. Subject stated he had not objected postponing the hearing pending District Attorney response and claimed he wanted _____ (CONTINUED ON ATTACHED SHEET).

DISPOSITION:

ASSESSED 180 DAY LOSS BEHAVIORAL CREDITS FOR DIVISION A OFFENSE. ASSESSED 10 DAYS DISCIPLINARY DETENTION AND UPON COMPLETION, TO BE RETAINED IN ADMINISTRATIVE SEGREGATION PENDING ICC FOR CREDIT LOSS CONFIRMATION AND PROGRAM AND HOUSING REVIEW.

4/07/87

ACTION BY: SIGNATURE    _____ C/Lt

E. R. Denne, Associate Warden Operations    SIGNATURE    Patti Jones CCII

DEPARTMENT OF CORRECTIONS
STATE OF CALIFORNIA

# ORDER AND HEARING FOR PLACEMENT IN SEGREGATED HOUSING

*An inmate is entitled to a written decision including references to the evidence relied upon and the reasons for such confinement. A copy of the completed form must be given to the inmate, a copy placed in the central file, and a copy retained in a central location at the institution.*

*Prior to initial placement, or within 48 hours of such placement, an inmate is entitled to written notice of the reasons for placement in sufficient detail to enable the inmate to prepare a response or defense.*

## PART I   NOTICE OF REASONS FOR PLACEMENT IN ADMINISTRATIVE SEGREGATION

| NAME | NUMBER | INSTITUTION |
|------|--------|-------------|
| Shegas, | D11404 | New Folsom |

A determination has been made to place you in segregated housing. The reasons for such placement are:

You were placed in Ad/seg on 12-15-86 for the fatal assault of Black D3342. A SHU term was imposed in that matter which is not due to expire until 2-27-90. A pending CDC115 for the fatal assault of Kempf C92795 is noted. You are being referred to ICC for annual review. Rx: Retain due to unexpired MEED of 2-27-90

| INMATE SIGNATURE | [X] Refused to Sign |
|---|---|
| ☐ Copy Given to Inmate | EMPLOYEE /A d Eda | DATE 11/3/88 |

*Representation by counsel-substitute is required when it is determined that the inmate is illiterate or that the complexity of the issues makes it unlikely that he/she can collect and present the evidence necessary for an adequate comprehension of the case. This determination must be made at the time of initial placement or within 48 hours of such placement. (Complete both A and B below.)*

## PART II   COUNSEL-SUBSTITUTE

A. STAFF ASSISTANT (Assigned if inmate is illiterate or issues complex.)

☐ Not Assigned                    ☐ Inmate Not Illiterate

☐ Inmate Declines                 ☐ Issues Not Complex

☐ Assigned          (Name) _____

Other Reasons or Comments:


B. INVESTIGATING EMPLOYEE (Assigned when inmate is not illiterate and issues are not complex but assistance is necessary to enable inmate to collect and present evidence necessary for an adequate comprehension of the case.)

☐ Not Assigned                    ☐ Inmate Declines

                                  ☐ Inmate Able to Collect and Present Evidence

☐ Assigned          (Name) _____

Other Reasons and Comments:



OFFICE L.

# DISTRICT ATTORNEY

## SACRAMENTO COUNTY

JOHN DOUGHERTY
District Attorney

KATHRYN CANLIS
Chief Deputy

April 10, 1987

Sgt. Greenlee
Folsom Prison
Represa, CA

Re:   Homicide of Walter Black
      Folsom 86/IR/717

Dear Sgt. Greenlee

I have read and reviewed reports submitted in the above-
entitled case.  As the reports indicate the confidential
informant will not testify nor will his identity be revealed,
this homicide is presently unprosecutable.

If this situation changes, I would be happy to re-evaluate
the case.  At this time, no charges will be filed against
Patrick Shegas as a result of this homicide.

Very truly yours

JOHN A. DOUGHERTY
DISTRICT ATTORNEY

JOHN O'MARA
Assistant Chief
Deputy District Attorney

JO:dw

...te of California

**Memorandum**

Date : February 9, 1987

To : S. HUGHLETT, LIEUTENANT

From : Folsom State Prison, Represa 95671 .

Subject: INCIDENT REPORT: Fatal Stabbing of Inmate KEMPF, C-92795, by inmate SHEGAS, D-11404, in cell FC-5203

On February 5, 1987, at approximately 2245 hours, I responded to an alarm in five (5) block, FC 5203, occupied by inmates KEMPF, C-92795 and SHEGAS, D-11404. Upon arriving at FC-5203, I observed inmate KEMPF lying on the floor close to the door. Inmate KEMPF was covered with blood and showed no physical movement. Inmate SHEGAS was instructed several times to move towards the back of the cell. At this time, the Control Officer was instructed to open FC-5203. Sergeant V. Rendon and Correctional staff entered the cell and placed inmate SHEGAS in mechanical restraints. KEMPF was removed from the cell and placed on a gurney. Responding staff transported inmate KEMPF to the infirmary where he was examined by medical staff. At approximately 2300 hours, Folsom Ambulance arrived and prepared him for transport to Sacramento Medical Center. At approximately 2313 hours, Correctional Officer M. Vreeland entered the back of the ambulance as a transport escorting officer. I then followed the ambulance to U.C. Davis Medical Center, arriving at the Medical Center at approximately 2338 hours. KEMPF was declared dead at approximately 2339 hours by SMC staff. I remained with the body while it was photographed and fingerprinted by Correctional Officer L. Kennedy. The body was then turned over to the Coroner's office.

R. L. FLIEGER
Correctional Officer
CSP-Sacramento County

VIOLATION REPORT

| NAME | | | INST. | HOUSING NO. | LOG NO. |
|---|---|---|---|---|---|
| SHEGAS | | | CSP-SC | FC-5203 | CAS-87-2-26 |

| RULE(S) & 3000-(A) | SPECIFIC ACTS FORCE AND VIOLENCE / STATE LAW | LOCATION FC-5203 | DATE 2-5-87 | TIME 2240 HOURS |

CIRCUMSTANCES:

At approximately 2240 hours on February 5, 1987, while assigned as Block #5 S&E, Correctional Officer Woods and I heard yelling in A-Section. Correctional Officer Woods and I responded immediately. She took the bottom tier and I took the top tier. As I approached cell 5203, I noticed the lights were out, so I took my flashlight and shined it into the cell. I witnessed Inmate Shegas strike Inmate Kempf several times with his right hand as Inmate Kempf lay on his back next to the cell door. I yelled to Inmate Shegas to move to the rear of the cell to which he complied. At this time, I saw a knife in his right hand. I then yelled at Correctional Officer Woods to get me some help and that there was a weapon involved. Inmate Shegas took the knife and laid it on the top bunk. Seconds later, he grabbed the knife with his right hand, moved towards Inmate Kempf, who was still laying on his back by the cell door, and began stabbing Kempf's upper body with the knife as Inmate Kempf fought back with his feet. Inmate Shegas returned to the rear of the cell, still with the knife in his right hand and again placed it on the top bunk. At this time, Inmate Kempf yelled out, "Get me out of here". Inmate Shegas then grabbed the knife from the top bunk with his right hand and said, "You mother fucker", and walked towards Inmate Kempf, who was still on his back by the cell door, and began stabbing his upper body several times. Inmate Shegas then returned to the rear of the cell and again laid the weapon on the top bunk. Responding staff arrived and Inmate Shegas was ordered to kneel down facing the rear of the cell. He was placed in restraints (Handcuffs) while Inmate Kempf was rushed to the infirmary. Correctional Sergeant _____ and I escorted Inmate Shegas to the infirmary where he was Mirandized and photographed and later taken to Cell Block #3 and placed in cell FC-8121. It should be noted that Inmate Kempf died as a result of wounds received during the assault.

| REPORTING EMPLOYEE (TYPED NAME AND SIGNATURE) CORRECTIONAL OFFICER V. CASTRO | ASSIGNMENT BLOCK #5 S&E | LOC WITH | DATE 2-7-87 |

CLASSIFICATION: [ ] ADMINISTRATIVE  [X] SERIOUS    HEARING REFERRED TO:    SEGREGATED PENDING HEARING

DIVISION:  [ ]A  [ ]B  [ ]C  [ ]D  [ ]E  [ ]F    [ ]NO  [ ]2ND  [ ]14  [ ]PC    LOC _____ DATE _____

INMATE COPY GIVEN TO INMATE BEFORE HEARING    W 2 Murray 98    STAFF MEMBER SIGNATURE 2/7/87    SUPPLEMENTS:    STAFF MEMBER SIGNATURE    DATE

DATE HEARING _____    STAFF MEMBER SIGNATURE    DATE    INCIDENT REPORT: _____    STAFF MEMBER SIGNATURE    DATE

PLEA: [ ] GUILTY  [ ] NOT GUILTY    FINDINGS: [ ] GUILTY  [ ] NOT GUILTY  (EVIDENCE TO SUPPORT CONCLUSIONS AND ANY FACTOR IN AGGRAVATION)

DISPOSITION:

ACTION BY: SIGNATURE _____    SIGNATURE _____    DATE _____

DATE TAKEN _____    SIGNATURE _____



OFFICE OF THE

# DISTRICT ATTORNEY

## SACRAMENTO COUNTY

JOHN DOUGHERTY
District Attorney

KATHRYN CANLIS
Chief Deputy

CASE DISPOSITION NOTICE
FOR ARRESTED SUBJECT
FOR WARRANT REQUEST

*MC*

*Charges Filed 3/5/87*

Date: __3/5/87__

Agency: __FOLSOM STATE PRISON__  Case No. __86/IR/717__

Attention: __Mr. CHUCK D'ARCY__    P.U. 12  DHPP

| Suspect | Custody status | Registry No. |
|---|---|---|
| 1. SHEGAS, PATRICK  D-11404 | | |
| 2. | | |
| 3. | | |

**I. WE ARE DECLINING TO FILE CHARGES FOR THE FOLLOWING REASONS:**

___ No reasonable likelihood of conviction
___ Search & Seizure problem
___ Interest of Justice
___ Add't'l investigation required; see attached request
___ Victim(s) unavailable/declines to prosecute
___ Witness(es) unavailable
___ Joined with other charges
___ Other--Explanation below
___ SUFFICIENT ADMINISTRATIVE REMEDIES EXIST.

Explanation:

**II. CASE REFERRED TO MISDEMEANOR BUREAU FOR THE FOLLOWING REASONS:**

___ Minimal quantity of narcotics, drugs, or property value
___ Defendant's minimal or non-existent prior record
___ Reported injuries not aggravated
___ Sufficient remedies exist at Muni Court level
___ Other--Explanation below

☐ ATTENTION PROPERTY: IF BOX IS CHECKED DISTRICT ATTORNEY HAS NO REQUEST TO HOLD EVIDENCE.  DETECTIVE MAY MAKE DISPOSITION DECISION.

If you have any questions concerning this decision, please contact me at

_____.

white: agency
yellow: property
pink: file
gold: court

CDC #: D11404
NAME: SHEGAS
MEPD: 2/18/2029
NEXT CLASSIFICATION: 09/05
HOUSING: D5-107L   CDC 128-G
CUSTODY: CLOBS
ASSIGNMENT: UNASSIGNED
PS: 164 LEVEL: IV
WG/PG: A2-B EFF. 2/12/04

ACTION: ANNUAL REVIEW, REDUCE PS FROM 168 TO 164, REAFFIRM CLOBS CUSTODY, WG/PG A2-B EFF. 2/12/04, REFER CASE TO CSR RX TX NON-ADVERSE MEDICAL TO LAC IV SNY/SVSP IV SNY DUE TO INCLUSION IN THE MENTAL HEALTH TREATMENT POPULATION (MHTP) AT THE CCCMS LEVEL OF CARE, NO DDP OR DPP CONCERN, SINGLE CELL APPROVED. CCI N. BROWN SERVED AS STAFF ASSISTANT.

Inmate SHEGAS made a personal appearance before Facility D, UCC for the purpose of an Annual Review. CCI N. Brown served as staff assistant based on inmate's inclusion in the MHTP at the CCCMS level of care. His safety concerns stem from being targeted for assault by the Aryan Brotherhood Prison Gang. On 9/16/04, inmate SHEGAS completed a mental health evaluation and met inclusion criteria for the MHTP at the CCCMS level of care per CDC 128-C. His case factors remained the same as CDC 128G dated 2/19/04, except for his TB alert code 22 dated 2/13/04. Committee notes inmate is unassigned. The review periods considered for this annual review were 9/1/03 through 8/31/04. He has remained disciplinary free for this review period. He did not qualify to receive work performance reports due to being unassigned. His placement score has been reduce to 164. Inmate requests to transfer to LAC. After a review of all case factors, committee elects to reduce PS from 168 to 164, reaffirm CLOBS custody, WG/PG A2-B eff. 2/12/04, refer case to CSR request transfer non-adverse medical to LAC IV SNY/SVSP IV SNY based on inclusion in the Mental Health Treatment Population at the CCCMS level of care. Inmate will retain CLOBS custody and A2-B WG/PG upon transfer. Inmate is not eligible for MSF, CCRC, MCCF, CCF, Camp, or Restitution Center due to time to serve and placement score. The inmate is not a participant in the DDP or the DPP. Inmate's case is approved for single cell housing. CDC forms 840, 812, 127, 1882 and Minimum Screening forms are current. Inmate SHEGAS was an active participant in this committee and indicated he understood all the actions taken. Inmate was advised of his right to appeal and that this Committee acts as his first level of appeal. His next Annual Review is scheduled for 09/05. There are no other concerns noted. (SR)

_____          _____
W.C. ROBERTS, FC   CHAIRPERSON        S. ROACHO, CCI        RECORDER

Committee Members: W.C. ROBERTS, FC; S. ROACHO, CCI; G. CHAVARRIA, CCII
cc:   Inmate, Central File
Date: 9/21/04          UNIT CLASSIFICATION COMMITTEE          INST: CAL IV

# EXHIBIT J

# AFFIDAVIT OF ANTHONY M. CRANE

I, Anthony M. Crane, hereby affirm:

1. On May 02, 2001, (approximately), while housed in administrative segregation California State Prison – Los Angeles County (CSP-LAC), I spoke briefly with an inmate Richard Crane, CDCR No. C-44519, whom I have known for some year(s).

2. May 02, 2001, during the conversation with inmate Richard Crane, it concerned his safety concerns that I personally knew about. Our conversation was about these safety concern issues.

3. May 02, 2001, during the conversation with Richard Crane regarding his safety concerns, I asked him where he was going to be transferred. His reply was (SAT-F), a known Sensitive Needs Yard. I bid him farewell and good luck. Furthermore, I assured him that he would be okay there at (SAT-F) Corcoran, for the simple fact that (SAT-F) Corcoran was a protective custody yard (A.K.A. Sensitive Needs Yard).

I, Anthony M. Crane, CDCR No. H-11719, affirm under the penalty of perjury that the foregoing is true and correct. (28 U.S.C. § 1746.)

Dated: July 23 , 2007.


Anthony M. Crane, No. H-11719

# EXHIBIT K

21

1     INMATE CRANE:  -- for --

2     PRESIDING COMMISSIONER WELCH:  Yeah, I'm

3 more interested at this time in knowing about you

4 than Shively.  Anyway, we're going to go to post-

5 convictions with your -- with -- Give your

6 attention to Commissioner Rodriguez.

7     DEPUTY COMMISSIONER RODRIGUEZ:  All right.

8 Good morning, Mr. Crane.  During this portion of

9 the hearing, I'll be addressing what you've done

10 since your last Board appearance which will then

11 bring us to the present.  In preparation for this,

12 I've reviewed your Central File.  If there's

13 anything that I leave out, either you or your

14 attorney can address it when I'm done, okay?

15     INMATE CRANE:  Yes, Sir.

16     DEPUTY COMMISSIONER RODRIGUEZ:  Your last

17 Board appearance was on August 7th, 1996 at

18 Lancaster State Prison at which time the Board

19 gave you a five-year denial, recommended that you

20 become disciplinary-free, work towards reducing

21 your custody level, upgrade vocationally and

22 educationally, and participate in self-help and

23 therapy groups.  I note that you were transferred

24 here to High Desert State Prison on May 9th of 2001

25 due to safety concerns.  You're currently -- Your

26. current classification score is 125 points.

27 You're currently housed as a Level IV inmate.

22

1    You're currently in AdSeg unit as of December 18th,

2    2001 due to safety concerns.  Your current custody

3    is Max B.  As far as education, and I'm going to

4    the psych report of August 20th, 2001 under

5    education, it says, "He --" which is you, excuse

6    me -- "inmate Crane, has not pursued any formal

7    education under the auspices of the CDC because he

8    felt 'like I didn't need it.'  He continues to

9    deny his need for any formal education."  And

10   there is no record that you've ever completed your

11   GED or high school; is that correct?

12            INMATE CRANE:  Not on the record.

13            DEPUTY COMMISSIONER RODRIGUEZ:  Okay.  And

14   you've been told that in prior hearings, you've

15   been told that at documentation hearings, and

16   you've failed to obtain your GED or high school.

17   As far as your vocation, you have not yet received

18   any vocation.  In fact, reading the Board report

19   of December 2000, page four of that report under

20   post-conviction factors, number B or alphabet B,

21   it says, "Crane states --" it says, "Crane states

22   his back problems will not allow him to work in

23   vocations so he will have trouble learning a

24   trade."  Also notes here under A, "Crane has not

25   yet met any of the BPT member recommendations."

26   Why with your -- all your drug problems that

27   you've had in the past, why have you never gotten

23

1    involved in AA or NA?

2        INMATE CRANE:  Because I've conquered it, I

3    mean, you know, and now I don't have it.

4        DEPUTY COMMISSIONER RODRIGUEZ:  You haven't

5    done anything for yourself since you've been in

6    prison, have you?

7        INMATE CRANE:  Nothing that you could see.

8    Nothing that's on paper.

9        DEPUTY COMMISSIONER RODRIGUEZ:  You still --

10   You used to associate with the AB, huh?

11       INMATE CRANE:  No, never have.

12       DEPUTY COMMISSIONER RODRIGUEZ:  That's in

13   the POR report and there's also a document on your

14   812.  You reviewed your Central File, correct?

15       INMATE CRANE:  Yeah.  How am I associated

16   with them?

17       DEPUTY COMMISSIONER RODRIGUEZ:  Well, it's

18   in the probation officer's report.  If you want to

19   look at your probation officer's report --

20       INMATE CRANE:  Well, way back --

21       DEPUTY COMMISSIONER RODRIGUEZ:  -- you

22   should have a copy.  Also, there's other

23   information I can't share with you in your

24   confidential section, but you've been informed.

25   It's on your CDC 812 that there is a confidential

26   memo that addresses your ex-association with the

27   Aryan Brotherhood.

# EXHIBIT L

State of California

Department of Corrections
High Desert State Prison

# Memorandum

Date:       July 3, 2002

To:        Inmate Crane,  # C-44519
           Housing: D5-115L

Subject:    **APPEAL LOG # HDSP- S-02-01123**
           **FIRST LEVEL RESPONSE**

APPEAL DECISION: Appeal GRANTED.

APPEAL ISSUE: You request to be transferred to Mule Creek State Prison (MCSP), Sensitive Needs Yard (SNY). You stated that you have been endorsed for transfer for MCSP SNY since April 23, 2002.

APPEAL RESPONSE: Inmate Crane, in reaching a decision in your appeal, your CDC-602 and its attachments, applicable sections of the California Code of Regulations (CCR) Title 15, and the CDC Operations Manual, were all reviewed and considered by Correctional Counselor II (CC II) T. Kopec.

After contacting the High Desert State Prison, Records Department, Transfer Out desk, CC II Kopec was informed that you are currently scheduled to transfer to MCSP on July 10, 2002.

Based on the information above your appeal has been GRANTED.

If you are dissatisfied with this decision, you may appeal to the Second Level by following the information located on the back of your CDC-602 Form.

T. KOPEC
Correctional Counselor II
Facility D

for R.J. Johnson — AW(A)
T. FELKER
Associate Warden
Complex II

c:    Central File
      Inmate File



EXHIBIT

# EXHIBIT M

CHRPTCCS        CALIFORNIA DEPARTMENT OF CORRECTIONS    REPORT DATE 05/13/05
            Requested Offender History for:CRANE,RICHARD,JOSEPH

|  | TRANSACTION DATE & TIME | TRANSACTION | CELL BED | FACILITY | |
|---|---|---|---|---|---|
| C44519 | 19871230163347 | BCM | EFBQB4F10000413?X | CMC | E |
|  | 19880217195603 | BCM | EFBQB4F10000430X | CMC | E |
|  | 19880316215738 | BCM | EFBQB3F20000325L | CMC | E |
|  | 19880320181719 | BCM | EFBQB4F10000413 | CMC | E |
|  | 19880418185416 | BCM | EFBQB4F10000416?X | CMC | E |
|  | 19880530183417 | BCM | EFBQB4F10000419?X | CMC | E |
|  | 19890405190536 | BCM | EFBQB4F10000419?X | CMC | E |
|  | 19890626195216 | BCM | EFBQB4F10000415?X | CMC | E |
|  | 19890911143502 | BCM | EFBQB4F3000C4378 | CMC | E |
|  | 19890928111248 | BCM | EFBQB3F20000333?X | CMC | E |
|  | 19890927185001? | BCM | EFBQB4F10000418?X | CMC | E |
|  | 19891007184729 | BCM | EFBQB4F10000413?X | CMC | E |
|  | 19891007194951 | BCM | EFDQB3F30000050?X | CMC | E |
|  | 19900404192845 | BCM | EFBQB3F30000399R | CMC | E |
|  | 19900728132048 | BCM | EFBQB4F20000428? | CMC | E |
|  | 19900730184306 | BCM | EFBQB3F30000339?R | CMC | E |
|  | 19901219115044 | TRO | EFBQB3F30000399R | CMC | E |
|  | 19901219192907 | TRI | 4A7C000C00000211L | CCI | SMSA |
|  | 19910328093431 | BCM | 4A4A00000000010?L | CCI | SMSA |
|  | 19910618083691 | TRO | TRANSFER |  |  |
|  | 19910618112830 | TRI | 4B6A00000000010?L | CCI | SMSB |
|  | 19910711122401 | BCM | 4B5A0000000201110 | CCI | SMSB |
|  | 19910711122944 | BCM | 4B6A00000000011?L | CCI | SMSB |
|  | 19910816130142 | BCM | 4B5B0000000002080 | CCI | SMSB |
|  | 19910903090838 | BCM | 4B5C0000000001110 | CCI | SMSB |
|  | 19910906193242 | BCM | 4B5B0000000002080 | CCI | SMSB |
|  | 19910906193605 | BCM | 4B5C0000000001110 | CCI | SMSB |
|  | 19910906103032 | BCM | 4B5B0000000002080 | CCI | SMSB |
|  | 19910906103032 | BCM | 4B5C0000000001110 | CCI | SMSB |
|  | 19910906105407 | BCM | 4B5B0000000002080 | CCI | SMSB |
|  | 19911213200216 | BCM | 4B5B0000000002010 | CCI | SMSB |
|  | 19911216123602 | BCM | 4B5B0000000000208L | CCI | SMSB |
|  | 19920107095250 | BCM | 4B5B0000000002011L | CCI | SMSB |
|  | 19920227202252 | BCM | 4B5B0000000002080 | CCI | SMSB |
|  | 19920302181417 | BCM | 4B5C0000000001100 | CCI | SMSB |
|  | 19920303075033 | BCM | 4B6C0000000001041L | CCI | SMSB |
|  | 19920318084032 | BCM | 4B6A00000000021D0 | CCI | SMSB |
|  | 19920326102424 | BCM | 4B3C0000000002030 | CCI | SMSB |
|  | 19920511134148 | BCM | 4B3C0000000002020 | CCI | SMSB |
|  | 19920915094307 | BCM | 4B3C0000000001070 | CCI | SMSB |
|  | 19921020094853 | BCM | 4B3C0000000001071L | CCI | SMSB |
|  | 19930122134908 | BCM | 4B7C0000000002010L | CCI | SMSB |
|  | 19930205123718 | BCM | 4B7C0000000002008L | CCI | SMSB |
|  | 19930226124141 | BCM | 4B7C0000000001061L | CCI | SMSB |
|  | 19930310091749 | BCM | 4B7A0000000001011L | CCI | SMSB |
|  | 19950330094814 | BCM | 4B7C0000000001025 | CCI | SMSB |
|  | 19930507131805 | BCM | 4B4B0000000002011L | CCI | SMSB |
|  | 19930704130016 | BCM | 4B4C0000000001080L | CCI | SMSB |
|  | 19940909120951 | TRO | 4B4C0000000001082L | CCI | SMSB |
|  | 19940909225032 | TRI | C 1200000000245L | AMA |  |
|  | 19941002092209 | BCM | C 1200000000229L | AMA |  |

1 OF 2

CALIFORNIA DEPARTMENT OF CORRECTIONS    REPORT DATE 05/13/05
Requested Offender History for:CRANE,RICHARD,JOSEPH

| CDC# | TRANSACTION DATE & TIME | TRANSACTION | CELL SEG | FACILITY |
|------|------|------|------|------|
| C44519 | 19941023184521 | BCH | C 12000000002052 | ASA |
| | 19941031070523 | TRO | C 12000000002052 | ASA |
| | 19941031165636 | TRI | FD320000000002250 | LAC |
| | 19941111182429 | BCH | FD820000000002432 | LAC |
| | 19941112100746 | BCH | FD840000000011450 | LAC |
| | 19941113092749 | BCH | FD840000000013100 | LAC |
| | 19950407003139 | DCH | FD850000000002442 | LAC |
| | 19950408103141 | BCH | FD840000000011310 | LAC |
| | 19960307123311 | DCH | FD850000000001022 | LAC |
| | 19960311132436 | DCH | 18303030300011412 | LAC |
| | 19960312144436 | BCH | FD850000000001022 | LAC |
| | 19961231122731 | BCH | FD850000000024420 | LAC |
| | 19970604080914 | DCH | FD840000000001050 | LAC |
| | 19970727120416 | BCH | FD820000000002140 | LAC |
| | 19971001111714 | DCH | FAB200000002050 | LAC |
| | 19960305075810 | BCH | FAB500000002030 | LAC |
| | 19980901194309 | BCH | FAB100000002250 | LAC |
| | 19990303100031 | BCH | FAB100000002252 | LAC |
| | 19990320085723 | BCH | FAB100000002485 | LAC |
| | 19990327003722 | DCH | FAB100000001252 | LAC |
| | 19990730100428 | RCH | FAB100000001260 | LAC |
| | 19990730100002 | DCH | FAB100000001261 | LAC |
| | 20000822194325 | DCH | FD850000000022451 | LAC |
| | 20000903190214 | BCH | FD850000000024790 | LAC |
| | 20001201122439 | BCH | FD850000000001010 | LAC |
| | 20010819084807 | BCH | FD840000000021412 | LAC |
| | 20010420124430 | BCH | FD830000000013612 | LAC |
| | 20010503203353 | BCH | FAB000000001371 | LAC |
| | 20010509062405 | TRO | FAB500000001370 | LAC |
| | 20010509232401 | TRI | FD85T10000001172 | HDP |
| | 20010514101426 | BCH | FCB2T20000002090 | HDP |
| | 20011012125720 | DCH | FB85T10000001490 | HDP |
| | 20011018172424 | BCH | FDB8T10000001062 | HDP |
| | 20011107182159 | BCH | FDB8T20000002092 | HDP |
| | 20020325194739 | BCH | FD85T10000001150 | HDP |
| | 20020824125944 | BCH | FD85T10000001152 | HDP |
| | 20030612005646 | TRO | FDB5T10000001152 | HDP |
| | 20030612154503 | TRI | ZZ00000000000008 | PVP |
| | 20030612191856 | BCH | DFB5T20000002092 | PVP |
| | 20030702113623 | BCH | DFB3T10000001252 | PVP |
| | 20030728173720 | BCH | DFB3T20000002410 | PVP |
| | 20040419085850 | TRO | DFB3T20000002410 | PVP |
| | 20040419124148 | TRI | TKZZ00000000002 | SVSP |
| | 20040419132032 | BCH | FAB5T10000001280 | SVSP |
| | 20040515084324 | BCH | FBB5T10000001480 | SVSP |
| | 20040801190156 | BCH | FAB5T10000001380 | SVSP |
| | 20040808195009 | BCH | FAB5T20000002320 | SVSP |

Department of Corrections
Information Systems Branch
Distributed Data Processing Unit

## MOVEMENT

| | | |
|---|---|---|
| ADM | = | ADMISSION |
| BCM | = | BED CELL MOVE |
| DEP | = | DEPARTURE |
| ERR | = | ERROR CORRECTION |
| RDP | = | RETURN FROM DEPARTURE |
| RTB | = | RETURN FROM TEMPORARY BED/CELL MOVE |
| RTR | = | RETURN FROM TEMPORARY RELEASE |
| TBM | = | TEMPORARY BED/CELL MOVE |
| TRI | = | TRANSFER IN |
| TRO | = | TRANSFER OUT |
| TRL | = | TEMPORARY RELEASE |

## TRANSACTION DATE & TIME FORMAT(CCYYMHDDHHMMSS)

EXAMPLE:   20020904202757      September 4, 2002 at 08:27 pm and 57 seconds

Time is based upon Military time (24 hr clock)

| | | |
|---|---|---|
| CC | = | CENTURY |
| YY | = | YEAR |
| MH | = | MONTH |
| DD | = | DAY |
| HH | = | HOURS |
| MM | = | MINUTES |
| SS | = | SECONDS |

## INSTITUTIONS

| | | |
|---|---|---|
| AMA | = | MULE CREEK STATE PRISON |
| CCI SMSA | = | CALIFORNIA CORRECTIONAL INSTITUTION COMPLEX A |
| CCI SMSB | = | CALIFORNIA CORRECTIONAL INSTITUTION COMPLEX B |
| CMC E | = | CALIFORNIA MEN'S COLONY EAST |
| HDP | = | HIGH DESERT STATE PRISON |
| LAC | = | CALIFORNIA STATE PRISON LANCASTER LOS ANGELES COUNTY |
| PVP | = | PLEASANT VALLEY STATE PRISON |
| SVSP | = | SALINAS VALLEY STATE PRISON |

MOVEMENT.DOC

# EXHIBIT N

NAME and **NUMBER CRANE, C-44519**                    **Housing: B5-149U**          CDC 128-B (Rev. 02-97)

    Due to a problem that occurred at CSP-Lancaster I would consider inmate BACA P38698 an enemy. To head off future potential problems between us I am requesting that he be placed on my CDC 812 as an enemy, and that I be listed as an enemy on his CDC 812.

D. GUNTER CCI
DATE: 10/16/01                    HDSP C - Facility

CRANE C-44519                    GENERAL CHRONO

CC: C-FILE BACA P38698

# EXHIBIT O

1

2

SUPERIOR COURT OF CALIFORNIA

COUNTY OF MONTEREY

**FILED**

3

4  In re

5          Richard J. Crane

6                    On Habeas Corpus.

NOV 0 5 2007

CONNIE MAZ...
CLERK OF THE SUPERIOR COURT
NOEMI P. BECERRA DEPUTY

) Case No.: HC 5897
) ORDER
)
)
)
)
)

7

8          On September 5, 2007, Petitioner filed a petition for writ of habeas corpus.

9          Petitioner is currently incarcerated at Salinas Valley State Prison.

10          On August 7, 1996, the Board of Parole Hearings (Board) issued a five-year denial.  On

11  February 14, 2002, the Board issued a five-year denial.

12          Petitioner claims that in 1982 he arrived at Chino State Prison and was placed in

13  protective custody because he had testified in court against a prison gang member.  Thereafter,

14  he was housed at California State Prison—Los Angeles County (CSP-LAC).  While Petitioner

15  was incarcerated at CSP-LAC, he requested protection from Inmate Baca and Southern Hispanic

16  associates.  On May 1, 2001, Petitioner was placed in the CSP-LAC Administrative Segregation

17  Unit *for safety concerns*.  On May 2, 2001, CSP-LAC prison officials informed Petitioner that he

18  would be transferred to Mule Creek State Prison or California State Prison—Corcoran.  On May

19  9, 2001, Petitioner was transferred from CSP-LAC to High Desert State Prison (HDSP) *due to*

20  *safety concerns*.  Petitioner asked HDSP officials to place him in protective custody because he

21  had testified against a prison gang member.  According to Petitioner, his cellmate at HDSP was

22  stabbed in June 2001 for being a snitch.  HDSP officials placed Petitioner in the Administrative

23  Segregation Unit from October 18, 2001 to August 24, 2002 *because of the safety concerns*

24  *Petitioner expressed*.  Petitioner was subsequently housed in the Psychiatric Management Unit

25

1  from August 24, 2002 to May 12, 2003. On or about May 12, 2003, Petitioner was transferred to

2  Pleasant Valley State Prison.

3      Petitioner claims that CSP-LAC improperly placed him in the Administrative Segregation

4  Unit from May 1, 2001 to May 9, 2001, that CSP-LAC improperly transferred him to HDSP on

5  May 9, 2001, that Petitioner was improperly housed at HDSP Administrative Segregation Unit

6  from October 18, 2001 to August 24, 2002, that Petitioner had limited outdoor exercises while

7  housed at HDSP Administrative Segregation Unit, that Petitioner was improperly housed at the

8  Psychiatric Management Unit at HDSP from August 24, 2002 to May 12, 2003, and that CSP-

9  LAC and HDSP officials failed to adequately protect him.

10     All of these claims fail. Claims in a habeas petition must be timely filed. See *In re*

11  *Robbins* (1998) 18 Cal.4th 770, 778. Contrary to Petitioner's assertion, his claims are untimely.

12  All of the alleged actions by the CSP-LAC and HDSP officials took place *between 2001 and*

13  *2003*. The CSP-LAC placed Petitioner in the Administrative Segregation Unit on May 1, 2001.

14  The CSP-LAC transferred Petitioner to HDSP on May 9, 2001. HDSP officials placed Petitioner

15  in the Administrative Segregation Unit on October 18, 2001. HDSP officials placed Petitioner in

16  the Psychiatric Management Unit on August 24, 2002 and he remained there until May 12, 2003.

17  However, he did not file the instant petition until September 5, 2007.

18     Petitioner claims that the CSP-LAC and HDSP officials deprived him of any possibility

19  of receiving parole. This claim fails because it is untimely raised. See *Robbins, supra*, 18

20  Cal.4th at p. 778. Petitioner is contending that he was denied opportunities to participate in

21  programs *while he was incarcerated at CSP-LAC and HDSP between 2001 and 2003*. Petitioner

22  also claims that the Board *denied parole in 2002* because of his Maximum B custody status.

23  However, Petitioner did not file the instant petition until September 5, 2007. Moreover,

24  Petitioner fails to show he exhausted his administrative remedies. See *In re Muszalski* (1975) 52

25  Cal.App.3d 500, 508.

1    To the extent that Petitioner is complaining about the denial of parole in 2002, his claim

2  is untimely. *Robbins, supra*, 18 Cal.4th at p. 778.  Moreover, his petition challenging denial of

3  parole should be filed in the Los Angeles County where his conviction occurred.

4    To the extent that Petitioner is challenging his 1982 conviction of second degree murder,

5  his claim is untimely. *Robbins, supra*, 18 Cal.4th at p. 778.  Moreover, his petition challenging

6  his 1982 conviction should be filed in the Los Angeles County where his conviction occurred.

7    In light of the foregoing, the petition is denied.

8    IT IS SO ORDERED.

9  Dated:  11/5/07

10

11  _____

        Hon. Stephen A. Sillman

12      Judge of the Superior Court

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT P

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT



Court of Appeal - Sixth App. Dist.

**FILED**

DEC 1 3 2007

MICHAEL J. YERLY, Clerk

By _____
       DEPUTY

| | |
|---|---|
| In re RICHARD J. CRANE,<br><br>on Habeas Corpus. | H032287<br>(Monterey County<br>Super. Ct. No. HC5897) |

BY THE COURT:

The petition for writ of habeas corpus is denied.

(Premo, Acting P.J., Elia, J., and Duffy, J., participated in this decision.)

Dated ___DEC 1 3 2007___        ___PREMO, J._____ Acting P.J.

# EXHIBIT Q

S160032

# IN THE SUPREME COURT OF CALIFORNIA

### En Banc

In re RICHARD JOSEPH CRANE on Habeas Corpus

The petition for writ of habeas corpus is denied. (See *In re Robbins* (1998) 18 Cal.4th 770, 780; *In re Dexter* (1979) 25 Cal.3d 921; *People v. Duvall* (1995) 9 Cal.4th 464, 474.)

SUPREME COURT
FILED

AUG 1 3 2008

Frederick K. Ohlrich Clerk

_____
Deputy

_____
**GEORGE**
Chief Justice



Richard J. Crane, #C-44519
SALINAS VALLEY STATE PRISON
Fac. 'D' Bldg. #9, cell #196
P.O. Box 1050
SOLEDAD
CALIF. 93960-1050

LEGAL MAIL

CLERK OF THE COURT U.S. NORTHERN
DISTRICT OF CALIFORNIA
280 South First St., #2112,
San Jose, CA 95113-3095



UNITED STATES POSTAGE
$ 04.80